James A. BOWDOIN et al., Appellants,

v.

Buford MALONE, Jr., and United States of America, Appellees.

No. 18222.

United States Court of Appeals
Fifth Circuit.

Oct. 25, 1960.

Rives, Chief Judge, dissented.

Wm. Buford Mitchell, Forsyth, Ga., for appellants.

Raymond N. Zagone, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., Frank O. Evans, U. S. Atty., Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C., for appellees.

Before RIVES, Chief Judge, and CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

Appellants James A. Bowdoin, et al. filed an action in ejectment in a Georgia state court in the fictitious form of John Doe v. Richard Roe, as provided by the statutes of Georgia.[1] Personal service was had upon appellee Buford Malone,

1. Vol. 12, Code of Georgia, Annotated, Title 33, § 111:

"*Consent rule. Fictitious forms in pleading.*—The consent rule in ejectment

Jr. by the sheriff of Jasper County, Georgia; service upon the United States was attempted by mailing copies of the petition to the Attorney General of the United States and to the United States Attorney, thus revealing that the "true claimants" were the appellees Buford Malone, Jr., and the United States of America.

The appellees removed the case to the United States District Court, Doe v. Roe, 186 F.Supp. 407, 408, where they moved to dismiss the complaint for failure to state a claim upon which relief could be granted; because the state court did not have jurisdiction over the United States or Malone, and the United States had not consented to be sued or waived its immunity from suit; and because Malone was being sued "as an agent and employee of the United States and as to him the suit is in substance and effect one against the United States; thus, the United States is an essential and indispensable party to the suit." [2]

The entire argument of both litigants assumes that the uncontroverted aver-

ments of the petition of the appellants are sufficient to require answer by the appellee Malone and to a trial, unless the court below properly granted his motion, as well as that of the United States, to dismiss because of want of jurisdiction. Both parties conceded in the trial court and before us that the United States was not legally before the Court and that the action against it should be dismissed. The sole question remaining, therefore, is whether this statutory action in ejectment states a claim against appellee Buford Malone, Jr., Forest Service Officer, United States Department of Agriculture, whose official duties required him to be, and who was in fact, in charge and possession of the land described in the ejectment action under color of his office representing the United States.

The court below granted Malone's motion to dismiss on the ground "that the court has no jurisdiction over Malone since the proceeding is in substance and effect against the United States and that the United States has not consented to be sued or waived its immunity from suit." [3]

---

shall always be considered as filed, and admits lease, entry, and ouster. The fictitious forms in pleading in ejectment shall be sufficient." Cf. Horn v. Towson, 1926, 163 Ga. 37, 135 S.E. 487.

2. Neither in the motion nor in appellees' brief is it argued that the petition filed by appellant was in any way insufficient to bring the appellees within the scope and protection of the statutes of Georgia, some of which are quoted here:

12 Code of Georgia Annotated, Title 33, § 102: *"Plaintiff may recover on his prior possession, when.*—A plaintiff in ejectment may recover the premises in dispute, upon his prior possession alone, against one who subsequently acquires possession of the land by mere entry and without any lawful right whatever."

Ib. Title 33, § 104: *"Mesne profits, how recovered.*—The plaintiff in ejectment may add a count in his petition, and submit the evidence to the jury, and recover by way of damages all such sums of money to which he may be entitled by way of mesne profits, together with the premises in dispute."

Ib. Title 33, § 114: *"True claimant made defendant; effect of judgment.*—

A plaintiff in ejectment may in all cases make the true claimant defendant by serving a copy of the pending action upon him, and the person so notified shall be bound by the judgment."

Ib. Title 33, § 120: *"Writ of possession; issuance; contents.*—When a verdict in ejectment shall be rendered in favor of the plaintiff, and a judgment entered thereon, the clerk of the superior court shall issue a writ of possession, in which the clerk shall incorporate a clause directing the sheriff to collect, by levy and sale of the defendant's property, all such sums of money as shall have been awarded to such plaintiff in ejectment as mesne profits and costs."

Ib. Title 33, § 121: *"Against whom writ of possession may issue.*—The writ of possession shall not issue against third persons not known in the suit on which such writ of possession is founded, nor put in possession by, or claiming under or by virtue of, any conveyance from the defendant in such suit."

3. The court's reasons were thus amplified in its written opinion: "This court finds itself in agreement with the following statement in the opinon of Judge Gilliam

It is manifest that the court below did not base its decision on what the District Court for the Eastern District of North Carolina *did* in the Jones case, but adopted only a portion of what the district court there *said*. The fact is that the Jones suit involved, not only ejectment, but partition of lands in which Jones claimed to own a two-thirds interest, which the United States had taken without paying compensation under the Fifth Amendment. It appears from the decision that Dennis, the agent in charge of the tract of land, did not move to dismiss and did not ask summary judgment. Only the United States filed such motions. The final paragraph of Jones (127 F.Supp. 33) shows the action taken by the court in that case: "It does not clearly appear that this Court has no jurisdiction to entertain the case in any of its aspects, and the Court, therefore, denies both motions of the United States to dismiss as upon summary judgment."

We will not, however, confine this opinion to differentiating the Jones case from the case before us, as the argument of appellees is pitched upon the assumption that, if the Lee case has not been entirely overruled, "there may be no cases at all in which United States v. Lee will permit suit today,"—as was said in Jones and apparently adopted by the court below.

In comparing the case before us with decisions in other cases which will be discussed, and in determining whether the facts here come within the holding of United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171—much watered down under the opinion of the court below and the argument of appellee here—we must follow the general rule: [4] " '* * * that a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. * * * Under the Rules of Civil Procedure a case consists not in the pleadings, but the evidence, for which the pleadings furnish the basis. Cases are generally to be tried on the proofs rather than the pleadings.' " This makes it necessary that the salient portions of the petition be set out.[5]

Under this petition and the statutes of Georgia above quoted it is apparent that appellants would be able to prove: That they were, on the crucial dates, the true owners of such title to the lands involved as would support the leasehold interest they sought to establish; that the United States did not own any title to the lands which would defeat appel-

---

in the case of Jones v. United States, D.C.E.D.N.C.1954, 127 F.Supp. 31, 33:

" 'However, in my opinion, United States v. Lee has been severely limited by Larson [Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)], and with the possibility of the landowner recovering just compensation for the wrongful taking, there may be no cases at all in which United States v. Lee [106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171] will permit suit today.'

"The key to the possible distinction between Lee and Larson is contained in footnote 17 to Larson, pointing out that Lee was decided in 1882 before the enactment of the Tucker Act, which was enacted on March 3, 1887 * * *.

"Accordingly, the defendants' motion to dismiss will be granted, and counsel for the defendants may prepare and submit an appropriate order."

**4.** Stated by us in Des Isles v. Evans, et al., 5 Cir., 1952, 200 F.2d 614, 615–616.

**5.** "The petition of John Doe [James A. Bowdoin, et al.] shows that Richard Roe [Buford Malone, Jr.] has damaged him in the sum of Twenty-five Thousand Dollars; for that on January 1, 1953, James A. Bowdoin [and nine others] demised to your petitioners for the term of 50 years from said date the following lands in said County, to-wit:

" '* * * and your petitioner duly entered thereon under said lease and afterwards on December 1, 1953, said Richard Roe forcibly ejected and ousted your petitioner from said lands and the possession thereof.

"Wherefore your petitioner prays that process issue requiring said Richard Roe to be and appear at the next term of the Superior Court of said County to answer this complaint as provided by law."

lant's claims; that appellee Malone was in wrongful possession of said lands as agent of a principal which did not have any claim thereto, and that he had ousted appellants of their rightful possession; and that, based upon said tortious acts of appellee Malone, appellants are entitled to money damages and the possession of the land during the claimed term of the leasehold.[6]

It is manifest from the Georgia statutes quoted and referred to, as well as the decisions cited, that the common law action of ejectment in Georgia involves possession alone, that the only process issuable to the victor is a writ of possession, together with damages, and that "the writ of possession shall not issue against third persons not known in the suit on which such writ of possession is founded, * * *." The sole question presented, therefore, is one of law: is appellee Malone, under the admitted facts, entitled to have the action against him dismissed solely on the ground that he is protected by the asserted sovereign immunity of the United States?

If the Lee case is still the law applicable to ejectment suits of this character, it is plain that the complaint before us states a claim upon which relief can be granted, and that the appellee Malone is not protected by any sovereign immunity of the United States which may be present in such circumstances. Indeed neither the court below nor appellee's counsel seem to question this statement. If they did, the Lee case would reject their argument entirely, because the facts of the Lee case and those of the present case are identical in their legal effect. A comprehensive look at the Lee case is indicated.[7]

The Arlington estate of General Robert E. Lee had, during The War Between The States, been seized for non-payment of taxes. Under the jury's findings these taxes had in fact been tendered by a friend, but the tax collector had interpreted his authority as permitting payment of the taxes only by the record owner. After the United States had seized the lands, it established a fort and cemetery thereon. The plaintiff, in whom title to the land vested if its seizure could not be justified, brought an action of ejectment against the agents of the government in possession of the estate. The trial court overruled the suggestion of the Attorney General of the United States that the trial court was without jurisdiction, based on the ground that the property was in the possession of the United States. The ejectment action was tried to a jury, which found against the government agents, deciding that the attempted proof did not establish title in the Government and that the agents' possession was not, therefore, legally justified. The Supreme Court affirmed, holding that the lower court was competent to decide the issues between the parties without the presence of the United States whose consent to be sued had been withheld.

A close reading of Lee reveals that, although some of the language of the opinion referred to taking property without just compensation, its real basis was that the government agents were ordinary tort feasors, not immunized for their wrongful trespass upon the plaintiff's property by the fact that they claimed to be acting on behalf of the government. It was admitted that Kaufman, Strong, et al. who were actually holding the land were doing so as agents in possession of the property of the United States. A few excerpts from the ex-

6. Kauffman v. Deese, 1949, 205 Ga. 841, 55 S.E.2d 358, and Vinson v. Cannon, 1957, 213 Ga. 339, 99 S.E.2d 108. In the latter decision the general rule is stated, at page 109 of 99 S.E.2d:
"Needless to say the fictitious forms of pleading in ejectment are still the law in this State, with the defendant admitting the lease and entry of the plaintiff and his ouster by the defendant from the lands involved. Code, § 33–111; Code Ann.Supp. § 24–3344. * * * The purpose of the action is to eject the defendant from possession of the land involved. * * *"

7. 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171.

haustive Lee opinion will suffice to epitomize its holdings:

"This proposition [that the court can render no judgment for the plaintiff and against the defendants because they hold the property as officers and agents of the United States, and that the property was appropriated to lawful public uses] rests on the principle that the United States cannot be lawfully sued without its consent in any case, and that no action can be maintained against any individual without such consent, where the judgment must depend on the right of the United States to property held by such persons as officers or agents for the government. * * *" [106 U.S. at page 204, 1 S.Ct. at page 247.]

"On the other hand, while acceding to the general proposition that in no court can the United States be sued directly by original process as a defendant, there is abundant evidence in the decisions of this court that the doctrine, if not absolutely limited to cases in which the United States are made defendants by name, is not permitted to interfere with the judicial enforcement of the established rights of plaintiffs when the United States is not a defendant or a necessary party to the suit * * *." [Id. 106 U.S. at pages 207–208, 1 S.Ct. at page 250.]

"Under our system the *people,* * * * are the sovereign. * * * The citizen here knows no person, however near to those in power, or however powerful himself, to whom he need yield the rights which the law secures to him when it is well administered. When he, in one of the courts of competent jurisdiction, has established his right to property, there is no reason why deference to any person, natural or artificial, not even the United States, should prevent him from using the means which the law gives him for the protection and enforcement of that right. * * *" [106 U.S. at pages 208–209, 1 S.Ct. at page 251.]

"The case before us is a suit against Strong and Kaufman as individuals, to recover possession of property. * * * in this case * * *, after a judicial inquiry had made it clear that the property belonged to plaintiff and not to the United States, we are still asked to forbid the court below to proceed further, and to reverse and set aside what it has done, and thus refuse to perform the duty of deciding suits properly brought before us by citizens of the United States. * * *" [Id. 106 U.S. at page 210, 1 S.Ct. at page 252.]

"' * * * The objection is that, as the real party cannot be brought before the court, a suit cannot be sustained against the agents of that party; * * * This is certainly true where it is in the power of the plaintiff to make them parties; but if the person who is the real principal, the person who is the true source of the mischief, by whose power and for whose advantage it is done, be himself above the law, be exempt from all judicial process, it would be subversive of the best-established principles to say that the laws could not afford the same remedies against the agent employed in doing the wrong which they would afford against him could his principal be joined in the suit.' * * *" [Id., 106 U.S. at page 213, 1 S.Ct. at page 255.]

"This examination of the cases in this court establishes clearly this result: that the proposition that when an individual is sued in regard to property which he holds as officer or agent of the United States, his possession cannot be disturbed when that fact is brought to the attention of the court, has been overruled and denied in every case where it has been necessary to decide it, * * *." [Id., 106 U.S. at pages 215–216, 1 S.Ct. at page 257.]

"That the United States are not bound by a judgment to which they are not parties, and that no officer of the government can, by defending a suit against private persons, conclude the United States by the judgment, was sufficient to decide that case, and was all that was decided. * * *" [Id., 106 U.S. at page 217, 1 S.Ct. at page 258.]

"It is to be presumed in favor of the jurisdiction of the court that the plaintiff may be able to prove the right which he asserts in his declaration.

"What is that right as established by the verdict of the jury in this case? It is the right to the possession of the homestead of plaintiff. A right to recover that which has been taken from him by force and violence, and detained by the strong hand. This right being clearly established, we are told that the court can proceed no further, because it appears that certain military officers, acting under the orders of the President, have seized this estate, and converted one part of it into a military fort and another into a cemetery. * * *" [Id., 106 U.S. at page 219, 1 S.Ct. at page 260.]

"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it. * * *" [Id., 106 U.S. at page 220, 1 S.Ct. at page 261.]

"It cannot be, then, that when, in a suit between two citizens for the ownership of real estate, one of them has established his right to the possession of the property according to all the forms of judicial procedure, and by the verdict of a jury and the judgment of the court, the wrongful possessor can say successfully to the court, Stop here, I hold by order of the President, and the progress of justice must be stayed. That, though the nature of the controversy is one peculiarly appropriate to the judicial function, though the United States is no party to the suit, * * * the unsuccessful party can interpose an absolute veto upon that judgment by the production of an order of the Secretary of War, which that officer had no more authority to make than the humblest private citizen. * * *" [Id., 106 U.S. at page 221, 1 S.Ct. at page 261.]

"Another consideration is that since the United States cannot be made a defendant to a suit concerning its property, and no judgment in any suit against an individual who has possession or control of such property can bind or conclude the government, * * * the government is always at liberty, notwithstanding any such judgment, to avail itself of all the remedies which the law allows to every person, natural or artificial, for the vindication and assertion of its rights. *Hence, taking the present case as an illustration, the United States may proceed by a bill in chancery to quiet its title, in aid of which, if a proper case is made, a writ of injunction may be obtained. Or it may bring an action of ejectment, in which, on a direct issue between the United States as plaintiff, and the present plaintiff as defendant, the title of the United States could be judicially determined.* * * *" [Emphasis supplied—Id., 106 U.S. at page 222, 1 S.Ct. at page 262.]

"The Circuit Court was competent to decide the issues in this case between the parties that were before it; in the principles on which these issues were decided no error has been found; and its judgment is Affirmed."

From these excerpts it is clear that the Lee case went considerably farther than the court below was asked to go in this case. Admitting that the United States was not properly made a party and

that it would not be bound by the judgment,—a principal established also by Georgia Statutes in Footnote 2 supra—appellants sought, by a proper judicial proceeding, merely to have interlopers put off of their land by an action at law in ejectment. If Lee has any vitality at all, the judgment of the court below must be reversed.

And what of Lee? Has it ever been overruled by the Supreme Court? The court below did not so hold and appellee's argument does not directly make such a contention. All the court below said was, quoting from a six year old district court decision, that Lee "has been severely limited by Larson, * * * and with the possibility of the landowner recovering just compensation for the wrongful taking, there may be no cases at all in which United States v. Lee will permit suit today." A study of the cases decided both before and after the one the court below quoted from will demonstrate that the latter portion of the quoted statement is entirely without foundation.

Examination of Shepard's United States Citations reveals that the Lee case has been cited three hundred ninety-six times. It has appeared in decisions of the Supreme Court fifty-eight times in seven of which it has been "distinguished," and in four "explained." It would seem from this that the editors of Shepard's consider that, in the remaining forty-seven cases, no fault has been found with Lee. It should be noted in passing that, where the Supreme Court has "distinguished" the Lee case, it has compared it with the case then before the court and has decided that Lee was inapplicable, because its facts did not control those of the case under consideration. With respect to the quoted statement of the court below that the possible distinction between Lee and Larson was that Lee was decided in 1882 before the enactment of the Tucker Act in 1887, it should be noted that fifty of the fifty-eight Supreme Court decisions referred to supra have been decided

since March 3, 1887 and also that this contention was specifically rejected in Dollar, infra.

Probably the most significant point about this phase of the argument is that nobody has suggested that there is any authoritative holding that the Lee case does not now cover ejectment suits just as fully as it did the day of its rendition. The argument that its application has been severely limited has arisen when the principles of Lee was sought to be applied to other and often quite different situations, governed by entirely different rules of law. A reading of those cases will reveal also that there have been no clear-cut distinctions between the facts to which Lee's principles apply and those to which it does not apply—no blacks and whites, only varying shades of gray.

Mr. Justice Frankfurter, in his dissent in the Larson case,[8] has done a masterful job of analyzing a large number of the cases dealing with the principles of Lee and assigning them to categories and sub-categories in an effort to draw the line as distinctly as varying facts will permit. Starting with the statement (337 U.S. at page 706, 69 S.Ct. at page 1469): "There is, however, an attendant weakness to a system that purports to pass merely on what are deemed to be the particular circumstances of a case. Consciously or unconsciously the pronouncements in an opinion too often exceed the justification of the circumstances on which they are based, or, contrariwise, judicial preoccupation with the claims of the immediate leads to a succession of *ad hoc* determinations making for eventual confusion and conflict," he asserts that some of the confusion "is doubtless due to the fact that a steady change of opinion has gradually undermined unquestioned acceptance of the sovereign's freedom from ordinary legal responsibility. * * * In the course of a century or more a steadily expanding conception of public morality regarding 'governmental responsibility' has led to a 'generous policy of consent for suits against the gov-

---

8. 337 U.S. 705–732, 69 S.Ct. 1469–1483.

ernment' to compensate for the negligence of its agents as well as to secure obedience to its contracts." 337 U.S. at pages 708–709, 69 S.Ct. at pages 1470—1471. And, as further support of his statement, he cites the speed with which the Eleventh Amendment was passed after the Supreme Court's decision in Chisholm v. Georgia, 1793, 2 Dall. 419, 1 L.Ed. 440, along with the cases of State of New Hampshire v. State of Louisiana, 108 U.S. 76, 86–88, 2 S.Ct. 176, 27 L.Ed. 656; Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 396, 59 S.Ct. 516, 83 L.Ed. 784, and Federal Housing Administration v. Burr, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724, where the Supreme Court held that the doctrine of sovereign immunity was in disfavor, as well as Borchard's bibliography in 20 A.B.A.J. 747, 748, and the materials in Judge Mack's opinion in The Pesaro, D.C., 277 F. 473, reversed, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088. To these might be added the several Acts in which Congress has specifically withdrawn sovereign immunity, such as the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., Federal Old Age, Survivors and Disability Insurance Benefits Act, 42 U.S.C.A. § 405(g), and I.R.C.1954 § 7422 et seq., 26 U.S.C.A. § 7422 et seq.

We will not attempt a general discussion of the cases, referring instead to Mr. Justice Frankfurter's dissent supra as presenting a fair and exhaustive examination of the leading cases.

The court below cites in its opinion as authority for the judgment rendered, a case from this Court, Rambo v. United States, 5 Cir., 1945, 145 F.2d 670, 671, certiorari denied, 1945, 324 U.S. 848, 65 S.Ct. 685, 89 L.Ed. 1408. It quotes from that decision this sentence: "The United States has not consented to be sued in the District Court of the United States in suits to try title to lands claimed by it where the plaintiff is not in possession and his claim of title is denied." It is sufficient to answer that the case before us is not such a case as the court below there described. This is not a suit to try title to land. True, plaintiffs must show title in themselves as the basis for their possessory action, but the judgment sought does not involve title to land at all. This is purely a common law action in ejectment, as recognized and defined by Georgia's statutes, and involves merely a dispute between individuals for possession of the land.

The main reliance of the court below was the Larson case, as is the argument of appellees here. Before taking up discussion of that case we ought to consider the decision of the Supreme Court two years earlier in Land, et al. v. Dollar, et al., 1947, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209.

Dollar was a case where members of the United States Maritime Commission had physical control of the property in question, but it was claimed by Dollar that the property was wrongfully withheld. The Supreme Court approved the principle that the trial court had authority to proceed on the merits in order to determine whether the plaintiff's claim that the withholding of the pledged property was, under the circumstances, tortious and therefore subject to relief against the agents as individuals. The court specifically applied the principles of Lee as they are reinforced by such cases as Sloan Shipyards Corp. v. United States Shipping Board Emergency Fleet Corp., 1922, 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762; Goltra v. Weeks, 1926, 271 U.S. 536, 46 S.Ct. 613, 70 L.Ed. 1074, and Ickes v. Fox, 1937, 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525. Mr. Justice Douglas, speaking for an unanimous court (Mr. Justice Black not participating), stated:

"Where the right to possession or enjoyment of property under general law is in issue, and the defendants claim as officers or agents of the sovereign, the rule of United States v. Lee, supra, has been repeatedly approved. [Eight Supreme Court cases cited.] * * * In United States v. Lee, supra, record title of the land was in the United States and its officers were in possession. The force of the decree in

that case was to grant possession to the private claimant. Though the judgment was not res judicata against the United States, [106 U.S.] at page 222, [1 S.Ct. at page 262] it settled as between the parties the controversy over possession. * * *

"We do not trace the principle of United States v. Lee, supra, in its various ramifications. Cases on which petitioners rely are distinguishable. This is not an indirect attempt to collect a debt from the United States by preventing action of government officials which would alter or terminate the contractual obligation of the United States to pay money. * * * It is not an attempt to get specific performance of a contract to deliver property of the United States * * * It is not a case where the sovereign admittedly has title to property and is sued by those who seek to compel a conveyance or to enjoin disposition of the property, the adverse claims being based on an allegedly superior equity or on rights arising under Acts of Congress. * * *

" * * * But the rule is based on practical considerations reflected in the policy which forbids suits against the sovereign without its consent. The 'essential nature and effect of the proceeding may be such as to make plain that the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration * * * But public officials may become tort-feasors by exceeding the limits of their authority. *And where they unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity, he is not relegated to the Court of Claims to recover a money judgment. The dominant interest of the sovereign is then on the side of the victim who may bring his possessory action to reclaim that which is wrongfully withheld.*

"It is in the latter category that the pleadings have cast this case. That is to say, if the allegations of the petition are true, the shares of stock never were property of the United States and are being wrongfully withheld by petitioners who acted in excess of their authority as public officers. If ownership of the shares is in the United States, suit to recover them would of course be a suit against the United States. But if it is decided on the merits either that the contract was illegal or that respondents are pledgors, they are entitled to possession of the shares as against petitioners, though, as we have said, the judgment would not be res judicata as against the United States * * * " [9] [Emphasis added.]

In considering Larson, let it be understood that the opinion had the unconditional concurrence of only a minority of the Supreme Court, to-wit, Chief Justice Vinson and Justices Black, Reed and Murphy, all of whom, except Justice Black, had concurred in Dollar. Mr. Justice Douglas, author of Dollar, joined in the opinion only because the case involved the minutiae of the intricate machinery of sales by the world's largest merchant.[10] Mr. Justice Rutledge concurred in the result, while Justices Frankfurter, Jackson and Burton dissented, the dissenting opinion of Justice Frankfurter having been above referred to several times.

9. 330 U.S. at pages 737–739, 67 S.Ct. at page 1012.

10. His concurrence states: "I think that the principles announced by the Court are the ones which should govern the selling of government property. Less strict applications of those principles *would cause intolerable interference with public administration.* To make the right to sue the officer turn on whether by the law of sales title had passed to the buyer *would clog this governmental function with intolerable burdens.* So I have joined the Court's opinion." [Emphasis added.]

The majority opinion in Larson is susceptible of being construed as questioning some of the fundamental bases of Lee. As Mr. Justice Frankfurter points out,[11] to ascribe to Lee the effect which some of the language of Larson would seem to justify would be to overrule, not only Lee, but many other Supreme Court cases, including landmark decisions by Mr. Justice Holmes, Sloan Shipyards Corp. v. United States, 1922, 258 U.S. 549, 567–568, 42 S.Ct. 386, 66 L.Ed. 762, and Chief Justice Taft, Goltra v. Weeks, 271 U.S. 536, 46 S.Ct. 613, 70 L.Ed. 1074. The dissent quotes from the decision of Mr. Justice Holmes:

"The plaintiffs are not suing the United States but the Fleet Corporation, and if its act was unlawful, even if they might have sued the United States, they are not cut off from a remedy against the agent that did the wrongful act. In general the United States cannot be sued for a tort, but its immunity does not extend to those that acted in its name. It is not impossible that the Fleet Corporation purported to act under the contract giving it the right to take possession in certain events, but that the plaintiffs can show that the events had not occurred." 337 U.S. at pages 719–720, 69 S.Ct. at page 1476.

Larson is a suit for injunction and declaratory judgment against the head of the War Assets Administration upon which a restraining order was issued ex parte. The opinion stresses (337 U.S. at page 686, 69 S.Ct. at page 1459): "Nor was it claimed that the Administrator had any personal interest in this coal or, indeed, that he himself had taken any wrongful action." Injunctive relief was sought against the Administration for wrongs allegedly committed by its subordinate officials. The crucial paragraph in the Larson decision, the one which differentiates that case from the one before

the Court below and which supports our holding here is this:

"Before answering that question it is perhaps advisable to state clearly what is and what is not involved. *There is not involved any question of the immunization of Government officers against responsibility for their wrongful actions.* If those actions are such as to create a personal liability, whether sounding in tort or in contract, the fact that the officer is an instrumentality of the sovereign does not, of course, forbid a court from taking jurisdiction over a suit against him." 337 U.S. 686, 69 S.Ct. 1460. [Emphasis added.]

The emphasized words describe exactly what is involved in this action. Appellants claim that appellee Malone is wrongfully and tortiously holding possession of their lands as agent for the United States, which does not have the right of such possession. We think that this is a valid and basic differentiation between Larson and this case.

We think it is significant also that the Supreme Court did not overrule Lee or Dollar, essaying merely to distinguish those cases from the Larson case. The special concurring opinion of Mr. Justice Douglas helps to clarify the scope and content of the differentiation. The fact that three Justices who, a scant two years before, had concurred in Dollar, also concurred in Larson carries a strong inference, we think, that they were not subscribing at all to a doctrine which would, in such a basic aspect, cut the ground from under Dollar and Lee. At all events, whatever language of Larson seems to conflict with Lee and Dollar is explainable under this pungent paragraph in Mr. Justice Frankfurter's dissent:[12]

"These cases likewise apply a principle that is clear. There is an appearance of inconsistency in some of the cases only because opinions also

---

11. 337 U.S. at pages 718–720 et seq., 69 S.Ct. at pages 1469, 1476.

12. 337 U.S. 713, 69 S.Ct. 1473.

are prey to the frailties of composition. Familiar phrases are not always used with critical precision or with due relevance to the circumstances of a particular case."

It is worthy of note also that, since Larson, Lee has been cited with approval in the concurring opinion of Mr. Justice Frankfurter, Joint Anti-Fascist Refugee Committee v. McGrath, et al., 1951, 341 U.S. 123, 152, 71 S.Ct. 624, 95 L.Ed. 817; and also by him, speaking for an unanimous court,[13] in Leiter Minerals, Inc. v. United States, 1957, 352 U.S. 220, 226, 77 S.Ct. 287, 1 L.Ed.2d 267. Dollar has, since Larson, been cited with approval in the concurring opinion of Mr. Justice Douglas in Georgia Railroad & Banking Co. v. Redwine, Etc., 1952, 342 U.S. 299, 307, 72 S.Ct. 321, 96 L.Ed. 335. Neither Lee nor Dollar has been questioned by the Supreme Court in any subsequent opinion, as far as our search has revealed.

Larson has been quoted in the opinion of the Court by Mr. Justice Burton in Anti-Fascist Committee v. McGrath, supra, 341 U.S. at page 140, 71 S.Ct. at page 632, as follows: "The respondents are not immune from such a proceeding. Only recently, this Court recognized that 'the action of an officer of the sovereign (be it holding, taking or otherwise legally affecting the plaintiff's property) can be regarded as so "illegal" as to permit a suit for specific relief against the officer as an individual * * * if it is not within the officer's statutory powers or, if within those powers * * * if the

powers, or their exercise in the particular case, are constitutionally void.' "

Mr. Justice Frankfurter, dissenting in Snyder v. Buck, Paymaster, 1950, 340 U.S. 15, 29, 71 S.Ct. 93, 100, 95 L.Ed. 15, cited his dissent in Larson and added further remarks concerning the increasing disrepute of the doctrine of sovereign immunity.[14]

In summary, it is clear that, however broad the apparent sweep of the limitations placed upon Lee by some of the courts may be, the Supreme Court has never questioned its controlling validity in possessory actions like ejectment, seeking to oust the government's agents from wrongful possession growing out of their tortious or illegal acts. That is all this case involves. The unanimity with which the principles here approved have been upheld springs, doubtless, from the conviction that the implied immunity of the government itself should be extended to its agents only with great caution; and from the realization that the government, in such a suit as this, has the simple option of filing a counterclaim aimed at quieting its challenged title or of raising the same issues in an independent proceeding.

■ We hold that the action against appellee Malone is not foreclosed because he possesses the land as agent for the government; and the judgment of the court below is reversed and the case is remanded for further and not inconsistent proceeding.

Reversed and remanded.

---

13. Mr. Justice Douglas dissented in part, 352 U.S. 230, 77 S.Ct. at page 293, but he concurred in the portion of the opinion in respect to which Lee was cited.

14. "In scores of cases this Court has had to consider when a suit, though nominally against one holding public office, is in fact a suit against the Government and as such barred by want of the sovereign's consent to be sued. See Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, App. 729, [69 S.Ct. 1457, 1481, 93 L.Ed. 1628]. The subject, it has been recognized, is not free from casuistry because of the natural, even if unconscious, pressure to escape from the doctrine of

sovereign immunity which—whatever its historic basis—is hardly a doctrine based upon moral considerations. The trend of deep sentiment, reflected by legislation and adjudication, has looked askance at the doctrine. See Keifer & Keifer v. R. F. C., 306 U.S. 381, 390–392, [59 S.Ct. 516, 83 L.Ed. 784]. If astuteness has been exercised to deny the representative character of an official in order to avoid his identification as the sovereign *ad hoc,* it runs counter to the rational administration of justice not to find an official the sovereign *ad hoc* and the suit against him, in effect, a suit against the sovereign when sovereign immunity is not circumscribed thereby."

**106**

RIVES, Chief Judge (dissenting).

The district court's clear and able opinion reported in 186 F.Supp. 407, 408 shows that " * * * counsel for the plaintiff admitted at the pre-trial conference today that the above-quoted paragraphs 2 and 3 of the removal petition are true and correct."[1] From that admission, the district court correctly concluded: "It does now appear, therefore, that Malone does not purport to act in the premises as an individual but solely as an official or employee of the sovereign."[2] The appellants make no denial of any of these admissions of fact upon which the district court's opinion and judgment were based.

Malone might not be immunized from personal liability in damages, but a writ to oust Malone from the possession which he holds solely on behalf of the United States would interfere with governmental functions. It seems to me that the full discussion in Larson v. Domestic and Foreign Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, demonstrates that this action was properly dismissed as a suit against the United States to which it had not consented. See also, Georgia R. & B. Co. v. Redwine, 1952, 342 U.S. 299, 304, 72 S.Ct. 321; Leiter Minerals, Inc. v. United States, 1957, 352 U.S. 220, 226, 77 S.Ct. 287; Stewart v. United States, 5 Cir., 1957, 242 F.2d 49, 51; Hart and Wechsler, The Federal Courts and the Federal System, pp. 1169–1180. I respectfully dissent.

---

1. Those paragraphs read as follows:

"2. Before the commencement of this action and at all times hereinafter mentioned, petitioner Buford Malone, Jr. was a Forest Service Officer with the Forest Service, United States Department of Agriculture, and his official duties as a Forest Service Officer required him to be, and he was, in charge and in possession of the land described in said ejectment suit.

"3. At all times mentioned in said action, petitioner, Buford Malone, Jr., was acting solely under color of his office as a Forest Service Officer for the Forest Service, United States Department of Agriculture, and all his acts in connection with the matters charged in said complaint were committed by him under color of his said office."

2. Later in the opinion, the district court said:

"Under the Larson decision if it were contended that Malone were acting beyond a statutory limitation upon his power, it would be necessary for the complaint to set out the statutory limitation upon which plaintiff relies. 337 U.S. 682, 690, [69 S.Ct. 1457]. Not only is there no such allegation, but *there is a solemn admission that his official duties as a forest service officer required him to be and that he was in charge and in possession of the land involved.*" (Emphasis supplied.)