W. H. MIRACLE, Plaintiff,

v.

Colonel A. M. JACOBY, Individually, and as Resident Engineer, U. S. Army Engineer District, Little Rock, Ark., Corps of Engineers, and H. C. McKinney, Individually, and as Chief of the Real Estate Section, U. S. Army Engineer District, Little Rock, Ark., Corps of Engineers, Defendants.

Civ. A. No. 1574.

United States District Court
W. D. Arkansas,
Fort Smith Division.

March 30, 1961.

J. M. Smallwood, Russellville, Ark., Wiley Bean, Clarksville, Ark., for plaintiff.

Chas W. Atkinson, U. S. Atty., Fort Smith, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

On January 25, 1961, the plaintiff, W. H. Miracle, a resident of the City of Dallas and a citizen of Texas, filed his complaint against defendants, Colonel A. M. Jacoby, individually, and as Resident Engineer, U. S. Army Engineer District, Little Rock, Arkansas, and H. C. McKinney, individually, and as Chief of the Real Estate Section, U. S. Army Engineer District, Little Rock, Arkansas.

It is alleged that both defendants are residents of the City of Little Rock and citizens of Arkansas, and that the amount in controversy exceeds the sum of $10,-000, exclusive of interest and costs. That the plaintiff is the owner of certain land in Johnson County, Arkansas, situate within the Western District of Arkansas; that the defendants, their agents, employees and assistants have trespassed upon the plaintiff's lands, asserting and claiming a right thereto; and have threatened, and are threaten-

ing, to trespass upon such lands in the future.

Plaintiff contends that the repeated trespasses of the defendants could form the basis of a perpetual easement, and will do irreparable harm and damage to his property rights for which he has no adequate remedy at law.

Personal service was obtained on defendant McKinney on January 26, 1961, and on defendant Colonel Jacoby on January 30, 1961. Thereafter, on February 20, 1961, the United States Attorney filed a motion to dismiss on behalf of the defendants. The motion sets forth numerous objections to the suit, which briefly are: (1) the United States is an indispensable party to the suit; (2) the defendants' acts are protected by governmental immunity, (3) venue is improper, and (4) the complaint fails to state a claim which warrants injunctive relief.

Briefs have been received from each of the respective parties and considered by the court, and the motion is now ready for disposition.

■ At the outset, the well-established doctrine of sovereign immunity is recognized by the court. The background of this doctrine is discussed in 3 Davis, Administrative Law Treatise, Sec. 27.02. It is also recognized that it is sometimes possible to escape the doctrine of sovereign immunity and thereby compel or enjoin governmental action by suing an individual government official. See United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; Ex Parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714. Compare Louisiana v. Garfield, 1908, 211 U.S. 70, 29 S.Ct. 31, 53 L.Ed. 92; and Morrison v. Work, 1925, 266 U.S. 481, 45 S.Ct. 149, 69 L.Ed. 394.

The unsettled state of the law on this question has been recognized by the United States Supreme Court. Speaking of its past decisions on the subject, the court said in 1947 that "as a matter of logic it is not easy to reconcile all of them." Land v. Dollar, 1947, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209. In his dissenting opinion in Larson

v. Domestic & Foreign Commerce Corp., 1949, 337 U.S. 682, at page 709, 69 S.Ct. 1457, at page 1471, 93 L.Ed. 1628, Mr. Justice Frankfurter states:

"The course of decisions concerning sovereign immunity is a good illustration of the conflicting considerations that often struggle for mastery in the judicial process, at least implicitly. In varying degrees, at different times, the momentum of the historic doctrine is arrested or deflected by an unexpressed feeling that governmental immunity runs counter to prevailing notions of reason and justice. Legal concepts are then found available to give effect to this feeling, and one of its results is the multitude of decisions in which this Court has refused to permit an agent of the government to claim that he is pro tanto the government and therefore sheltered by its immunity."

Despite the pervasive inconsistencies, the case law is dominated by one outstanding generalization that is usually followed but sometimes violated—that sovereign immunity does not prevent a suit against a state or federal officer who is acting either beyond his authority or in violation of the Constitution. 3 Davis, Administrative Law Treatise, Sec. 27.03, at page 552. This principle has been recognized by the Court of Appeals for this Circuit. Magruder v. Belle Fourche Valley Water Users' Ass'n, 8 Cir., 1914, 219 F. 72. There the court said at page 78:

"If the acts of the defendants done and threatened were authorized by law, they might be the acts of the United States against which a court of equity would grant no relief. But if the averments of the complaint are true, and in deciding the question now under consideration they must be assumed to be so, these acts are unauthorized by and contrary to law. They are, therefore, not the acts of the United States, and a suit to enjoin their performance is not a suit against the United States,

or a suit to interfere with its property, or a suit to compel specific performance of its contracts. It is a suit to enjoin officers of the United States from unlawfully interfering with and diverting its water from those persons lawfully receiving and entitled to receive it, from unlawfully preventing the United States from discharging its duties and performing its contracts, to the irreparable injury of the plaintiff and its shareholders. That an executive officer is committing or about to commit acts unauthorized by or in violation of law, to the irreparable injury of the property rights of the plaintiff, is a good cause of action against such officer for injunctive relief."

In Correa v. Barbour, 1 Cir., 1934, 71 F.2d 9, the plaintiffs brought an action against the Forest Supervisor of a National Forest in Puerto Rico, seeking to regain possession of certain lands held by the defendant in his official capacity. The District Court dismissed the action, but the Court of Appeals reversed, holding that the United States was not an indispensable party to the action. At page 12 of 71 F.2d the court said:

"The second ground of demurrer stands no better. It is in substance and effect an assertion that the court is without jurisdiction because the United States is an indispensable party to the action; that, as between the plaintiffs and this defendant, no judgment can be entered determining their rights without a determination of the right and title of the United States. That this is not so is plainly pointed out in the cases above cited. The rights of the parties to this suit can be fully determined and judgment thereon entered without a judicial determination of the title of the United States. It is true that the defendant cannot prove that he was in possession under lawful authority without showing that the United States had good title to the land giving it authority to authorize him to enter and possess the land.

But in establishing his authority, the right and title of the United States is not at issue in the suit, but is a mere matter of evidence going to prove the character of the authority under which he holds possession (Winnipiseogee Lake Cotton & Woolen Mfg., etc., Co. v. City of Laconia, 74 N.H. 82, 84, 65 A. 378); and, as said in both of the Supreme Court cases above cited, a judgment in favor of the plaintiffs will not conclude the United States as to its title but only determine whether the defendant officer is or is not liable as a trespasser and should or should not be turned out of possession. The United States, therefore is not an indispensable party defendant."

Most, if not all, the cases concerning this problem are discussed in the recent case of Bowdoin v. Malone, 5 Cir., 1960, 284 F.2d 95. In the Bowdoin case, the plaintiff brought an action in ejectment against a federal Forest Service officer, involving some land of which he was in possession under color of his office. The District Court, 186 F.Supp. 407, dismissed the action, but the Court of Appeals reversed, holding that a judgment in the case would not involve title to the land, but involved merely a dispute between individuals for possession of the land. The court discussed thoroughly the opinion in the leading case of United States v. Lee, supra, and the effect of subsequent cases on the doctrine set forth by the Supreme Court in the Lee case. The Court of Appeals summarized its holding at page 105 of 284 F.2d with the following words:

"In summary, it is clear that, however broad the apparent sweep of the limitations placed upon Lee by some of the courts may be, the Supreme Court has never questioned its controlling validity in possessory actions like ejectment, seeking to oust the government's agents from wrongful possession growing out of their tortious or illegal acts. That is all this case involves. The unanimity with which the principles here

approved have been upheld springs, doubtless, from the conviction that the implied immunity of the government itself should be extended to its agents only with great caution; and from the realization that the government, in such a suit as this, has the simple option of filing a counterclaim aimed at quieting its challenged title or of raising the same issues in an independent proceeding."

■ The complaint in the instant case alleges that the defendants have trespassed on the land in question and are threatening future trespasses. If the plaintiff is in fact the owner of the land in question, then unprivileged entries on the land would constitute tortious or illegal acts. The defendants admit in their brief that an injunction against them would not be binding as to the United States or the Department of the Army. In such a case the United States is not a necessary party to an action for injunction, and the doctrine of sovereign immunity would not protect the defendants. United States v. Lee, supra; Bowdoin v. Malone, supra.

The second major contention of the defendants is that venue in the instant case does not lie in the Western District of Arkansas. This is a diversity action between a citizen of the State of Texas and two citizens of the Eastern District of Arkansas, involving an alleged trespass on land located within the Western District of Arkansas. The amount in controversy exceeds the sum of $10,000. The general rule as to venue is set forth in 28 U.S.C.A. § 1391. Subsection (a) of that section provides:

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside."

However, it is provided in 28 U.S.C.A. § 1392(b):

"Any civil action, of a local nature, involving property located in differ-

ent districts in the same State, may be brought in any of such districts."

Therefore, the court must determine insofar as venue is concerned whether or not a suit to enjoin a trespass on land is a "local" action.

■ The majority rule is that an injunction restraining trespass on lands may not be granted in any jurisdiction other than the State of the land's location, notwithstanding the residence or presence of the defendant within the jurisdiction of the court from which injunction is sought. 28 Am.Jur., Injunctions, Sec. 149. The rule is stated in 92 C.J.S. Venue § 38b, as follows:

"Actions to restrain trespass on realty, waste, the cutting of timber, and interference with complainant's water rights have been regarded as local and are to be brought in the county where the land lies."

In 3 Cyclopedia of Federal Procedure, Sec. 4.05, it is stated:

"Suits to determine the title to or possession of real property are necessarily local. Representative of this class are suits to establish title to land under public grant or patent, suits to remove clouds on title to real property, suits to enforce or foreclose vendor's liens, and suits to foreclose or cancel mortgages on land. Actions of ejectment, and trespass to land are, likewise, local, and the character of the suit in that respect is not altered by seeking relief in equity, and where so regarded by the laws of the state, a suit to enjoin such trespass is within the rule."

The applicable Arkansas venue statute is found in Ark.Stat.Ann., Sec. 27–601 (1947), and provides:

"Actions for the following causes must be brought in the county in which the subject of the action, or some part thereof, is situated * * *

"Fourth. For an injury to real property."

This same provision was Sec. 4994 of Mansfield Digest. In Cox v. Railway Co.,

1892, 55 Ark. 454, 18 S.W. 630, 631, the Supreme Court of Arkansas discussed the term "injury," as used in the Fourth Section of the above quoted statute, in the following manner:

"The term 'injury' is used in section 4994 in a technical sense, and as meaning every wrong which in legal contemplation is an injury to real property. This embraces not only injuries committed directly and forcibly, for which an action of trespass was the appropriate remedy under the former practice, but such also as nuisances, the obstruction of light or air, diverting watercourses, and other similar wrongs for which the remedy at common law was an action on the case. Of the latter class was permissive waste, which, being a failure to repair, was a mere nonfeasance; and yet it was classed as an injury to real property, and the venue was local. 1 Chit., pp. 144, 268. That an act which is only threatened may be an injury to real property, is shown by the statutory provisions affording a remedy in many cases to prevent it. Thus an injunction is granted 'to restrain the commission or continuance of some act which could produce great or irreparable injury to the plaintiff.'"

See also Drainage District No. 7 of Poinsett County v. Hutchins, 184 Ark. 521, 42 S.W.2d 996; Pruitt v. Sebastian County Coal & Mining Co., 1949, 215 Ark. 673, 222 S.W.2d 50.

Under Arkansas law and under the majority rule, an action to enjoin a trespass on real property must be considered local in character, and, therefore, venue in the instant case is proper in the Western District of Arkansas.

 The defendant further contends that the allegations of the complaint do not state a sufficient basis for the issuance of an injunction. It must be borne in mind that the plaintiff alleges past trespasses as well as threatened repeated future trespasses. He, therefore, contends that such trespasses may ripen into a perpetual easement, and that he has no adequate remedy at law since any legal remedy would require a multiplicity of suits. There is no allegation in the complaint that any timber, crops, minerals, etc., have been or are threatened to be removed, and there is no allegation as to the insolvency of the defendants. The law in Arkansas is well settled that equity has jurisdiction to prevent repeated trespasses upon the property of another by injunction, where the remedy at law for damages is inadequate, and also to restrain such trespassing, to avoid a multiplicity of suits, especially where the wrongdoer is insolvent. Brown v. Myers, 1940, 200 Ark. 511, 514, 139 S.W. 2d 398; Missouri Pac. R. R. Co. v. Hobbs, 1929, 178 Ark. 1146, 1149, 13 S.W.2d 610. See also 28 Am.Jur., Injunctions, Sec. 147.

The general rule regarding repeated or continuing trespass is stated in 43 C.J.S. Injunctions § 64(a) and (b) as follows:

"The general rule permits injunctive relief for repeated or continuing trespasses, even in cases where the damage is nominal and no single trespass causes irreparable injury.

\* \* \* \* \* \*

"Aside from the irreparable character of the injury, an injunction to restrain repeated or continuing trespasses may be based on inadequacy of legal remedy, avoidance of multiplicity of suits, or prevention of acquisition of an easement by continued trespass."

██ For the purpose of a motion to dismiss, the allegations contained in the complaint are regarded as true. On that basis the complaint in the instant case sufficiently alleges a cause of action for injunctive relief.

The defendants finally contend that the plaintiff is not entitled to an injunction since the title to the land in question is in dispute.

In 28 Am.Jur., Injunctions, Sec. 142, at page 641, the learned authors say:

"The diversity of judicial opinion on the question whether a court of equity will grant injunctions in cases of disputed title or right before determination of the title or right in an action at law is reflected in cases in which injunctive relief is sought against trespasses. Traditionally, the courts have refused to enjoin a trespass of any kind on real estate where it appeared from the pleadings that there was a controversy about the title to the property, founding their refusal to act on the theory that it was a matter for a court of law rather than for a court of equity to determine and adjust disputed titles to real property, and a party should not be thus deprived of his right to a trial by jury with respect to these matters, and on the unwillingness of a court of equity to use injunction to take property out of the possession of one party and put it into that of another, or to transfer it to one whose rights have not been established at law."

In Du Fresne v. Paul, 1920, 144 Ark. 87, at page 94, 221 S.W. 485 at page 487, the court said:

"The complaint of the appellee did not state a cause of action within the jurisdiction of a court of equity, because the facts as alleged, if true, do not show that the appellee did not have a complete and adequate remedy at law. As was stated by this court in Western Tie & Timber Co. v. Newport Land Co., 75 Ark. 286–288, 87 S.W. 432: 'The insolvency of the defendant is not alleged. There is no allegation that there would be continuing trespasses, making necessary a multiplicity of suits to redress the injury at law. No facts are alleged to show that there will be irreparable injury to the freehold.' Ex parte Foster, 11 Ark. 304; Myers v. Hawkins, 67 Ark. 413, 56 S.W. 640; Haggart & McMasters v. Chapman & Dewey Land Co., 77 Ark. 527, 92 S. W. 792; Burnside v. Union Saw Mill Co., 92 Ark. 118, 122 S.W. 98.

"But, even if the allegation of insolvency of the appellant had been made, and if there had been an allegation as to the necessity of a multiplicity of suits in order to stay the hand of the trespasser, still the complaint would not have stated a cause of action in equity for the reason that the appellee's title was in dispute. 'Whenever the complainant's title is disputed in case of trespass, a court of equity will not interfere by injunction on the ground of a multiplicity of suits unless he has successfully established his title by trial at law.' Syllabus 5, Carney v. Hadley, 32 Fla. 344, 14 So. 4, 22 L.R.A. 233."

Here there is no allegation that the defendants claim that they are the owners of the land, or that the land is owned by the United States. In essence, the plaintiff alleges that he is the owner of the land and the defendants are trespassing thereon. Paragraph 10 of the complaint indicates that ultimately there may be involved the question of title. The allegation is:

"That both defendants, individually, and acting through their agents, employees and assistants, are denying the plaintiff's title to said property, attacking the same and asserting that the title thereto is in parties other than the plaintiff and are asserting a right to interfere with plaintiff's lawful possession and right to possession of the aforesaid premises, and are threatening to eject plaintiff from the property."

By this allegation the plaintiff does not allege that the defendants are claiming to be the owners of the land, or that the United States of America has or is asserting ownership of the land. It may be that when answer or responsive pleading is filed by defendants, the question of ownership of the land will be presented. In the event such a question is raised, it will be incumbent upon the court to take such action and to enter such orders as the facts and the law require, but until the question is properly presented

by the pleadings, the court should not and does not consider the question.

In summary, the court holds that the United States is not an indispensable party to this action; that the defendants are not protected by the doctrine of sovereign immunity; that venue is properly laid in the Western District of Arkansas; and that the complaint sufficiently states a cause of action for injunctive relief.

Therefore, an order is being entered today denying the defendants' motion to dismiss and allowing the defendants 30 days in which to file their answers or otherwise plead.