LEITER MINERALS, INC., *v.* UNITED
STATES ET AL.

No. 26.   Argued November 6–7, 1956.—Decided January 14, 1957.

*Samuel W. Plauché, Jr.* argued the cause and filed a brief for petitioner.

*Assistant Attorney General Morton* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Roger P. Marquis* and *Fred W. Smith.*

*Charles D. Marshall* argued the cause for the California Company et al., respondents. With him on the brief was *Eugene D. Saunders.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This case presents for decision important questions regarding the applicability to the United States of the restrictions against stay of state court proceedings contained in 28 U. S. C. § 2283 and the propriety of the injunction decreed by the District Court and sustained by the Court of Appeals. Petitioner in 1953 had filed a petitory action in a Louisiana state court against respondent-mineral-lessees of the United States. In that action, a suit by one out of possession claiming title to, and possession of, immovables, petitioner sought to have itself declared owner of the mineral rights under land owned by the United States, and it also sought an accounting for oil and other minerals removed by respondent-lessees under their lease from the United States. Petitioner founded its claim on Louisiana Act No. 315 of 1940, La. Rev. Stat., 1950, § 9:5806, which, it alleged, made "imprescriptible" a reservation of mineral rights in a deed of December 21, 1938, to the United States by its predecessor in title.[1]

---

[1] The reservation, in its pertinent portion, provided: "The Vendor reserves from this sale the right to mine and remove, or to grant to others the right to mine and remove, all oil, gas and other valuable minerals which may be deposited in or under said lands, and to remove any oil, gas or other valuable minerals from the premises; the right to enter upon said lands at any time for the purpose of mining and removing said oil, gas and minerals, said right, subject to the conditions hereinafter set forth, to expire April 1, 1945, it being understood, however, that the vendors will pay to the United States of America, 5% of the gross proceeds received by them as royalties or otherwise from all oil or minerals so removed from in or under the aforedescribed lands, until such time as the vendors

Respondent-lessees filed exceptions in the state court proceedings, urging that under Louisiana law the lessor should be made a party and the lessees discharged from the suit, that this was essentially a suit against the United States, which had not consented to be sued, that the United States was an indispensable party, and that no cause of action had been stated. The state trial court found that a cause of action had been stated, and it overruled the exceptions.

At this point the United States, joining petitioner and other interested parties as defendants, brought the present

---

shall have paid to the United States of America, the sum of $25,000, being the purchase price paid by said United States of America for the aforedescribed properties.

.        .        .        .        .

"Provided that at the termination of the ten (10) year period of reservation, if not extended, or at the termination of any extended period in case the operation has not been carried on for the number of days stated, the right to mine shall terminate, and complete fee in the land become vested in the United States.

"The reservation of the oil and mineral rights herein made for the original period of ten (10) years and for any extended period or periods in accordance with the above provisions shall not be affected by any subsequent conveyance of all or any of the aforementioned properties by the United States of America, but said mineral rights shall, subject to the conditions above . . . set forth, remain vested in the vendors."

Act No. 315 provides: ". . . when land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the United States of America, or any of its subdivisions or agencies, from any person, firm or corporation, and by the act of acquisition, verdict or judgment, oil, gas, and/or other minerals or royalties are reserved, or the land so acquired is by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas and/or other minerals or royalties, still in force and effect, said rights so reserved or previously sold shall be imprescriptible." See also the prior Act No. 151 of 1938 providing that prescription should not run against a reservation of mineral rights in real estate acquired by the United States or the State of Louisiana.

suit in the District Court for the Eastern District of Louisiana to quiet title to the mineral rights; it also sought a preliminary injunction to restrain petitioner from prosecuting its action in the state court. The United States based its claim of ownership on the provision in the 1938 deed from petitioner's predecessor in title that the reservation of mineral rights would expire on April 1, 1945, subject to certain conditions not material to this case. The United States claimed that irreparable injury in the form of loss of royalties would result from any temporary, wrongful dispossession of its lessees by the state court proceedings. Affidavits were also submitted in support of the claim that permanent loss of wells currently producing oil would probably result from any temporary cessation of production. The petitioner moved to dismiss the United States' complaint on the ground that the state court had already assumed jurisdiction over the property in question; in the alternative, petitioner moved to stay the federal proceedings pending determination of the state court action because questions of state law were involved.

The District Court held that, since the United States was not a party to the state court suit, the title of the United States could be tried only in the federal court action and that an injunction against prosecution of the state proceedings should issue to protect its jurisdiction pending determination of the ownership of the property. 127 F. Supp. 439. The Court of Appeals affirmed, holding that the preliminary injunction was proper because "the district court under the clear provisions of the statute, 28 U. S. C. § 1345, became vested with exclusive jurisdiction to determine the title of the United States to the mineral rights claimed by appellant." 224 F. 2d 381, 383–384. Because of the presence of important and difficult questions of federal-state relations, questions

more difficult than the Government appears to have found them, we granted certiorari. 350 U. S. 964.

28 U. S. C. § 2283 provides:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

It must first be decided whether this section applies to stays sought by the United States because different answers to this question will put different aspects on other issues in the case. An analogous problem was presented in *United States* v. *United Mine Workers,* 330 U. S. 258, where the Court held that the provisions of the Norris-LaGuardia Act, 47 Stat. 70, 29 U. S. C. § 101, that no federal court had jurisdiction, subject to qualifications, to issue an injunction in labor disputes to prohibit certain acts, did not apply to the United States. The Norris-LaGuardia Act, like 28 U. S. C. § 2283, effected, in general language, a limitation on the jurisdiction of the federal courts. Furthermore, since it was largely the diversity jurisdiction which spawned the substantive problems that the Norris-LaGuardia Act removed from the federal courts, the limitations on the federal courts imposed by the Norris-LaGuardia Act, like those of 28 U. S. C. § 2283, were in an area of federal-state relations calling for particular circumspection in adjudication.

In interpreting the general language of the Norris-LaGuardia Act, the Court relied heavily on "an old and well-known rule," albeit a rule of construction, "that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect." 330 U. S., at 272.

While, strictly speaking, any "pre-existing" rights would have to be found in the 1789–1793 pre-statute period,[2] the rationale of the rule requires not that the rights be "pre-existing" but rather that they would exist apart from the statute. There can be no doubt, apart from the restrictions of 28 U. S. C. § 2283, of the right of the United States to enjoin state court proceedings whenever the prerequisites for relief by way of injunction be present. Treating the rule invoked in the *United Mine Workers* case merely as an aid to construction, it would by itself lead us to hold that the general language of 28 U. S. C. § 2283 did not apply to the United States in the absence of countervailing considerations, such as significant legislative history pointing toward its inclusion or inferences clearly to be drawn from relevant presuppositions for so including it.

In *United Mine Workers,* the Court did not rely entirely on the rule of construction because its reading of the Act as a whole and the legislative history supported the conclusion that the United States was not to be included. In this case, there is no legislative material to support or to gainsay the applicability of the rule of construction. There is, however, a persuasive reason why the federal court's power to stay state court proceedings might have been restricted when a private party was seeking the stay but not when the United States was seeking similar relief. The statute is designed to prevent conflict between federal and state courts. This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a

---

[2] The basic provisions of 28 U. S. C. § 2283 go back to 1793, 1 Stat. 335.

226

national interest. The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U. S. C. § 2283 would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U. S. C. § 2283 alone. It is always difficult to feel confident about construing an ambiguous statute when the aids to construction are so meager, but the interpretation excluding the United States from the coverage of the statute seems to us preferable in the context of healthy federal-state relations.[3]

The question still remains whether the granting of an injunction was proper in the circumstances of this case. We start with one certainty. The suit in the federal court was the only one that could finally determine the basic issue in the litigation—whether the title of the United States to the mineral rights was affected by Louisiana Act No. 315 of 1940. The United States was not a party to the state suit and, under settled principles, title to land in possession of the United States under a claim of interest cannot be tried as against the United States by a suit against persons holding under the authority of the United States. See *United States* v. *Lee,* 106 U. S. 196. Although the state court might mould peti-

---

[3] Most of the lower federal courts that have considered this problem have, without much discussion, reached the same result. *E. g., United States* v. *Taylor's Oak Ridge Corp.,* 89 F. Supp. 28; *United States* v. *Cain,* 72 F. Supp. 897; *United States* v. *Phillips,* 33 F. Supp. 261, reversed on other grounds, 312 U. S. 246; *United States* v. *McIntosh,* 57 F. 2d 573; *United States* v. *Babcock,* 6 F. 2d 160, reversed for modification, 9 F. 2d 905; *United States* v. *Inaba,* 291 F. 416. But see *United States* v. *Land Title Bank & Trust Co.,* 90 F. 2d 970; *United States* v. *Certain Parcels of Land,* 62 F. Supp. 1017, appeal dismissed by stipulation, 151 F. 2d 1022.

tioner's suit to try title into a suit for possession or might merely order respondent-lessees to account for minerals removed, nevertheless such proceedings could not settle the basic issue in the litigation and might well cause confusion if they resulted in a judgment inconsistent with that subsequently rendered by the federal court.

Petitioner relies heavily on *United States* v. *Bank of New York & Trust Co.*, 296 U. S. 463. There, in a federal district court proceeding, the United States was claiming by assignment certain funds of three Russian insurance companies that were being held in the custody of a state court, in connection with the liquidation of the companies, subject to court orders concerning distribution to claimants under the state insurance laws. On the basis of this claim, the United States sought to enjoin distribution of the funds and to require payment of them to it. This Court, affirming dismissal of the complaints and denial of the injunction, held that the state court had obtained jurisdiction over the funds first and that the litigation should be resolved in that court. The Court also noted that there were numerous other claimants, indispensable parties, who had not been made parties to the federal court suit. In remitting the United States to the state court, the Court saw no "impairment of any rights" of the United States or "any sacrifice of its proper dignity as a sovereign." *Id.,* at 480–481.

The situation in the present case is different. All the parties in the state court proceeding have been joined in the federal proceeding. Moreover, the *Bank of New York* case presented the more unusual situation where the United States, like any private claimant, made a claim against funds that it never possessed and that were in the hands of depositaries appointed by the state court. In this case, a private party is seeking by a state proceeding to obtain property currently in the hands of

persons holding under the United States; the United States is seeking to protect that possession and quiet title by a federal court proceeding. Therefore, since the position of the United States is essentially a defensive one, we think that it should be permitted to choose the forum in this case, even though the state litigation has the elements of an action characterized as *quasi in rem*. We therefore hold that the District Court properly exercised its jurisdiction to entertain the suit in the federal court and to prevent the effectuation of state court proceedings that might conflict with the ultimate federal court judgment.

One further aspect of the case remains to be considered. The District Court advanced this additional ground for its decision:

> "Moreover, if the state court suit is allowed to proceed to final judgment, the rights of the United States to the property in question will actually be determined 'behind its back' . . . for the reason that, since ownership of these mineral rights will turn on an interpretation of a state statute . . . this court and the appellate federal courts may be required, under Erie Railroad Co. v. Tompkins . . . to follow that judgment in spite of the fact that the United States is not a party to those proceedings. . . ." 127 F. Supp., at 444.

But the fact that the United States is not a party to the state court litigation does not mean that the federal court should initiate interpretation of a state statute. In fact, where questions of constitutionality are involved—and the Government contends that an application of the state statute adverse to its interests would be unconstitutional—our rule has been precisely the opposite: "as questions of federal constitutional power have become more

and more intertwined with preliminary doubts about local law, we have insisted that federal courts do not decide questions of constitutionality on the basis of preliminary guesses regarding local law." *Spector Motor Co.* v. *McLaughlin*, 323 U. S. 101, 105; see *Stainback* v. *Mo Hock Ke Lok Po*, 336 U. S. 368, 383; *Railroad Commission* v. *Pullman Co.*, 312 U. S. 496, 498–502.

The Government contends that Act No. 315 of 1940 does not apply when the parties themselves have contracted for a reservation of specific duration and that if the statute is construed to apply to this situation, it would impair the obligation of the Government's contract. Petitioner disagrees. The Supreme Court of Louisiana has never considered the specific issue or even discussed generally the rationale of the statute, especially with reference to problems of constitutionality. The District Court recognized the importance of the statute in deciding this case; it also recognized that a problem of interpretation was involved, that the statute cannot be read by him who runs. What are the situations to which the statute is applicable? Is the statute merely declaratory of prior Louisiana law? What are the problems that it was designed to meet? The answers to these questions are, or may be, relevant. Before attempting to answer them and to decide their relation to the issues in the case, we think it advisable to have an interpretation, if possible, of the state statute by the only court that can interpret the statute with finality, the Louisiana Supreme Court. The Louisiana declaratory judgment procedure appears available to secure such an interpretation, La. Rev. Stat., 1950, 13:4231 *et seq.*, and the United States of course may appear to urge its interpretation of the statute. See *Stanley* v. *Schwalby*, 147 U. S. 508, 512–513. It need hardly be added that the state courts in such a proceeding can decide definitively only

questions of state law that are not subject to overriding federal law.

We therefore modify the judgment of the Court of Appeals to permit an interpretation of the state statute to be sought with every expedition in the state court in conformity with this opinion.

*Modified and affirmed.*

MR. JUSTICE DOUGLAS, dissenting in part.

I agree that the state action was properly enjoined; and so I concur in the opinion of the Court to that extent. But I dissent from the direction to the District Court to hold the case while the parties repair to the state court to get an interpretation of the Louisiana statute around which this litigation turns.

That procedure is an advisable one where private parties question the constitutionality of a state statute. An authoritative construction of the state law may avoid the constitutional issue or put it in new perspective. See *Spector Motor Co.* v. *McLaughlin,* 323 U. S. 101, 104–105. In the *Spector* case, the plaintiff's claim was within the jurisdiction of the federal court solely because of the attack on the constitutionality of a state statute. Under 28 U. S. C. § 1331, the federal district court has jurisdiction where the matter in controversy exceeds the jurisdictional amount "and arises under the Constitution, laws or treaties of the United States." In litigation in the federal courts under that statute, the necessity of construing state law arises because of the federal court's duty to avoid if possible a federal constitutional question. *Siler* v. *Louisville & Nashville R. Co.,* 213 U. S. 175. In the *Spector* case, then, matters of state law were only ancillary to the primary responsibility of the federal court to resolve the constitutional issues.

But here, although potential constitutional questions may lurk in the background, this litigation primarily concerns not federal questions but title to land claimed by the United States. It is litigation which Congress by 28 U. S. C. §§ 1345, 1346, has entrusted to the federal district court. Those sections allow civil litigation of the United States—whether it involves federal or state law questions—to be conducted in the federal courts. In that situation it is the duty of the federal court to decide all issues in the case—those turning on state law as well as those turning on federal law. In *Meredith* v. *Winter Haven,* 320 U. S. 228, a case in the federal courts by reason of diversity of citizenship, we refused to remit the parties to the state court for decision of difficult state law questions. We held that it was the duty of the federal court to decide all issues in the case—state or federal, difficult or easy. And see *Propper* v. *Clark,* 337 U. S. 472. There have been exceptions to this policy, notably in bankruptcy proceedings where trustees are sometimes sent into state courts to obtain adjudications on local law questions pertinent to the administration of the bankrupt's estate. See *Thompson* v. *Magnolia Co.,* 309 U. S. 478. It is peculiarly inappropriate to follow that course here. Congress has decided that the United States should have the benefit of the protection of its own courts in this type of litigation. We properly hold that the District Court, not the state court, has jurisdiction of the controversy. But we beat the devil around the bush when, having taken the litigation out of the state court, we send the parties back to the state court for its construction of Louisiana law which is the most significant issue in the case. The problem is not only to construe the state statute but to construe it constitutionally. The federal court can make that construction as readily as the state court. That is the congressional scheme and we should not change it by judicial fiat.