**CITY OF THIBODAUX, Plaintiff,**

v.

**LOUISIANA POWER & LIGHT COMPANY, Defendant.**

**Civ. A. No. 6444.**

United States District Court
E. D. Louisiana,
New Orleans Division.

June 21, 1957.

516

Wollen J. Falgout, Thibodaux, La., Theo F. Cangelosi, Baton Rouge, La., Louis Claiborne, New Orleans, La., for plaintiff.

Harvey Peltier, Donald Peltier, Thibodaux, La., Monroe & Lemann, Andrew P. Carter, J. Raburn Monroe, Melvin

Schwartzmann, New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

The City of Thibodaux, operator of a municipally-owned electric utility plant, seeks in these proceedings[1] to condemn facilities owned and operated by the Louisiana Power & Light Company in that section of the city recently acquired by extension of the city's limits. Act 111 of 1900 [2] is suggested as containing the authority of the city to condemn these facilities.

In 1900, when Act 111 was passed by the Louisiana Legislature, the operations of utilities serving the cities of the State of Louisiana were usually confined to the territorial limits of the municipalities. In other words, there was a power plant in the city with sufficient conduits and lines emanating therefrom to service the homes and the industry in the area. Act 111 provides that such a plant, with its service accessories, when owned by private utility, may be condemned by the city for the operation of a public utility.

The defendant, Louisiana Power & Light Company, operates a private electric utility system servicing a large part of the state of Louisiana. Electric energy sufficient to service this large area is obtained from two plants operated by the defendant, its Sterlington plant near

[1.] Jurisdiction in this case is based on diversity of citizenship. It was removed by the defendant from the state court.

[2.] LSA–R.S. 19:101 et seq. LSA–R.S. 19:101 reads:

"Any municipal corporation of Louisiana may expropriate any electric light, gas, or waterworks plant or property whenever such a course is thought necessary for the public interest by the mayor and council of the municipality. When the municipal council cannot agree with the owner thereof for its purchase, the municipal corporation through the proper officers may petition the judge of the district court in which the property is situated, describing the property necessary for the municipal purpose, with a detailed statement of the buildings, machinery, appurtenances, fixtures, improvements, mains, pipes, sewers, wires, lights, poles and property of every kind, connected therewith, and praying that the property described be adjudged to the municipality upon payment to the owner of the value of the property plus all damages sustained in consequence of the expropriation. Where the same person is the owner of both gas, electric light, and waterworks plants, or of more than one of any one kind of plant, the municipal corporation may not expropriate any one of the plants without expropriating all of the plants owned by the same person.

"All claims for damages to the owner caused by the expropriation of any such property are barred by one year's prescription, running from the date on which the property was actually taken possession of and used by the political corporation."

.Monroe, Louisiana, and its plant at Nine Mile Point near New Orleans, Louisiana. The defendant operates in various parishes and municipalities through franchises obtained from those bodies. It holds a franchise from the Parish of Lafourche covering the area in suit, the area now part of the City of Thibodaux by reason of the recent extension of the city's limits. The question presented by this litigation is whether the · City, under Act 111 of 1900, may condemn, not the plant or plants with their accessories operated by the defendant utility, but whether the City may condemn only that portion of the defendant's system, the poles, the lines, etc., which service the newly annexed section of Thibodaux.

██ Although the power of eminent domain inheres in the United States and several states as an incident to their sovereignty,[3] the grant of that power by these sovereigns to one of their subdivisions will never pass by implication, for the power of eminent domain is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice.[4] When the power is granted by the state to one of its subdivisions, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained.[5] A federal court, therefore, before recognizing the exercise of power of eminent domain by a subdivision of a state under a state statute, must make certain that that power has been granted by the state to the subdivision in the form of its attempted exercise.

There are no state court decisions to guide this court in the resolution of this problem. In fact, it does not appear that any court at any time has ever interpreted Act 111 of 1900. The Attorney General of the State of Louisiana, in an opinion rendered October 10, 1951, in a situation identical to the one in suit, advises that a city may not expropriate a part of a utility system, in an area recently acquired by extension of the city limits, for the purpose of adding those facilities to the presently existing municipally operated utility. While the opinion of the Attorney General, of course, is not binding on this court under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 nevertheless coming from the chief legal officer of the state whose statute is to be interpreted, it gives this court pause. It points up the fact that no authoritative interpretation of the statute has ever been made by a Louisiana court. And before a federal court, under its diversity of citizenship jurisdiction, ventures into the field of expropriation under authority of a heretofore uninterpreted Louisiana statute, the need of guidance from the Supreme Court of Louisiana becomes clear.

██ Under these circumstances, the only way this court can determine with certainty whether the power sought to be exercised here exists in the City of Thibodaux is to have a decision of the Supreme Court of Louisiana so holding. An interpretation of the expropriation statute in suit may be obtained through the Louisiana Declaratory Judgment procedure[6] and this court may act with assurance in these proceedings after such interpretation is obtained.[7] Further

3. State of Georgia v. City of Chattanooga, 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 796; Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449; Pollard's Lessee v. Hagan, 3 How. 212, 44 U.S. 212, 11 L.Ed. 565.

4. Delaware, Lackawanna & Western R. Co. v. Town of Morristown, 276 U.S. 182, 48 S.Ct. 276, 72 L.Ed. 523; City of Richmond v. Southern Bell Telephone and Telegraph Co., 174 U.S. 761, 19 S.Ct. 778, 43 L.Ed. 1162; Orleans-Kenner E. Ry.

Co. v. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93; Breaux v. Bienvenu, 51 La.Ann. 687, 25 So. 321; Martin v. Patin, 16 La. 55; LSA–C.C. Art. 699.

5. See Note 4.

6. LSA–R.S. 13:4231 et seq.

7. See Leiter Minerals, Inc., v. United States, 352 U.S. 220, 229, 77 S.Ct. 287, 1 L.Ed.2d 267.

**518**

proceedings herein, therefore, will be stayed until the Supreme Court of Louisiana has been afforded an opportunity to interpret Act 111 of 1900.