**R. B. BRUNEMANN & SONS, INC.,**
**Petitioner-Defendant,**

v.

**DUKE UNIVERSITY,**
**Respondent-Plaintiff.**

**No. C–81–136–D.**

United States District Court,
M. D. North Carolina,
Durham Division.

Feb. 23, 1982.

---

David B. Sand, Minneapolis, Minn., for petitioner-defendant.

E. K. Powe and Patricia H. Wagner, Durham, N. C., for respondent-plaintiff.

MEMORANDUM OPINION

ERWIN, District Judge.

This matter came before the court on December 3, 1981, United States Court-house, Durham, upon the motion of respondent-plaintiff Duke University to remand this action to the state court (Superior Court of Durham County). The court having carefully considered all pleadings, documents, arguments of counsel, briefs, and supplemental briefs holds that it must abstain.

Respondent-plaintiff Duke University and petitioner-defendant Brunemann entered into a contract dated August 6, 1976 under which Brunemann agreed to fabricate and construct the stucco wall panel system and plaster for the Duke Hospital North in Durham, North Carolina for a contract price of $1,150,000. Duke University contracted directly with approximately fifty separate prime contractors who were each responsible for the construction of a portion of the project. Because the project was bid in portions as the design was completed, there was no single general contractor responsible for the entire building. The work of the many separate contractors was supervised and coordinated by a construction manager. Under this system, each contractor was responsible for the construction of its part of the project and contracted directly with all necessary subcontractors and had direct control over all facets of its work.

It is undisputed that at all times pertinent to its contract with Duke, Brunemann was not licensed in compliance with Article I of Chapter 87 of the North Carolina General Statutes. In April 1979, Brunemann filed a claim under its construction contract with Duke University for damages in excess of $1,000,000; this claim was submitted to the project architect and denied. In November 1979, Brunemann filed a claim for $1,500,000 with the American Arbitration Association. At Brunemann's request, the arbitration was held in abeyance until March 1981.

In March 1981, Duke University filed a complaint and a motion for stay of arbitration in the Superior Court of Durham County, North Carolina. Duke University's suit in the Durham County Superior Court re-

quested the court to stay arbitration pursuant to N.C.Gen.Stat. § 1–567.3 (Supp.1981) because Brunemann was not licensed under N.C.Gen.Stat. §§ 87–1 to 87–15.2 (1981 & Supp.). In its answer to Duke University's complaint, Brunemann contended that it was not required to be licensed under N.C. Gen.Stat. § 87–1 (Supp.1981), that Duke was estopped to assert the licensing statute as a defense to Brunemann's claim, and that enforcement of the licensing statute against Brunemann would violate Brunemann's due process rights under the Fourteenth Amendment to the Constitution of the United States.

Brunemann removed the action to this United States District Court, and Duke University filed a motion to remand on the ground, among others, that the federal court should abstain since the case involved unresolved and difficult issues of state law relating to state policies of substantial public import. The issue before the court is whether abstention is warranted on the grounds asserted by respondent-plaintiff Duke University.

Chapter 87 of the North Carolina General Statutes is a regulatory statute enacted to regulate the construction industry and to protect the general public from incompetent builders. *Bryan Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E.2d 507 (1968). The North Carolina courts have held that when an unlicensed person contracts for construction costing more than the minimum sums specified in the statute, he may not recover for the owner's breach of that contract, nor may he recover on a quasi-contractual theory. *Id.; Ar-Con Construction Co. v. Anderson*, 5 N.C.App. 12,

168 S.E.2d 18 (1969). The courts have also held that the statute does not require a subcontractor to be licensed, ruling that the public does not need to be protected from a subcontractor because the general contractor stands between the owner and the subcontractor. *Vogel v. Reed Supply Co.*, 277 N.C. 119, 177 S.E.2d 273 (1970).

Although the statute has been extensively litigated, the courts of North Carolina have not addressed the precise issue involved in this case, *i.e.*, whether a parallel prime contractor who contracts directly with a property owner to build a substantial portion of a new building is required to be licensed as a general contractor,[1] nor have the state courts yet dealt with the estoppel defense asserted by Brunemann; prior cases do not clearly indicate how the North Carolina courts would decide either of these issues. Therefore, the interpretation given to the state regulatory statute in this case will have far-reaching consequences which transcend the instant results.

■ Under the abstention doctrine, a United States District Court has the discretion to refuse to exercise its jurisdiction even when subject matter jurisdiction is proper. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The leading case on abstention is *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In *Pullman*, the United States District Court enjoined enforcement of a Texas Railroad Commission order after it was challenged as unauthorized under Texas law and in violation of the equal protection, due process, and commerce clauses of the United States

1. N.C.Gen.Stat. § 87–1 (Supp.1981) provides as follows:

For the purpose of this Article any person or firm or corporation who for a fixed price, commission, fee or wage, undertakes to bid upon or to construct or who undertakes to superintend or manage, on his own behalf or for any person, firm or corporation that is not licensed as a general contractor pursuant to this Article, the construction of any building, highway, public utilities, grading or any improvement or structure where the cost of the undertaking is thirty thousand dollars ($30,000) or more, shall be deemed to be a

"general contractor" engaged in the business of general contracting in the State of North Carolina.

This section shall not apply to persons or firms or corporations furnishing or erecting industrial equipment, power plant equipment, radial brick chimneys, and monuments.

This section shall not apply to any person or firm or corporation who constructs a building on land owned by that person, firm or corporation when such building is intended for use by that person, firm or corporation after completion.

Constitution. On appeal, the United States Supreme Court reversed and ordered the district court to stay its injunction pending state court proceedings to determine the validity of the Railroad Commission's order. In support of its decision to abstain, the Court noted that abstention by the district court would "avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." *Id.* at 500. In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975), the Court reaffirmed the necessity for the United States District Courts' abstention in at least two circumstances: (1) where a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law; and (2) where a case presents difficult questions of state law bearing on policy problems of substantial public import. *Id.* at 814, 96 S.Ct. at 1244.

In *Louisiana Power and Light Co. v. Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), Justice Frankfurter wrote as follows:

We have increasingly recognized the wisdom of staying actions in the federal courts pending determination by a state court of decisive issues of state law.... On the other hand, we have held that the mere difficulty of state law does not justify a federal court's relinquishment of jurisdiction in favor of state court action. *Meredith v. Winter Haven,* 320 U.S. 228, 236 [64 S.Ct. 7, 88 L.Ed. 9]. (Footnote omitted.) But where the issue touched upon the relationship of City to State, *City of Chicago v. Fieldcrest Dairies, Inc.,* 316 U.S. 168 [62 S.Ct. 986, 86 L.Ed. 1355], or involved the scope of a previously uninterpreted state statute which, if applicable, was of questionable constitutionality, *Leiter Minerals, Inc., v. United States,* 352 U.S. 220, 229 [77 S.Ct. 287, 1 L.Ed.2d 267], we have *required* District Courts, and not merely sanctioned an exercise of their discretionary power, to stay their proceedings pending the submission of the state law question to state determination. (Emphasis added.)

*Id.* at 27–28, 79 S.Ct. at 1072.

In *Kaiser Steel Corp. v. W. S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968), the Supreme Court held, *per curiam* :

The Court of Appeals erred in refusing to stay its hand. The state law issue which is crucial in this case is one of vital concern in the arid State of New Mexico, where water is one of the most valuable natural resources. The issue, moreover, is a truly novel one. The question will eventually have to be resolved by the New Mexico courts, and since a declaratory judgment action is actually pending there, in all likelihood that resolution will be forthcoming soon. Sound judicial administration requires that the parties in this case be given the benefit of the same rule of law which will apply to all other businesses and landowners concerned with the use of this vital state resource.

*Id.* at 594, 88 S.Ct. at 1754.

Finally, *Harris County Commissioners v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975), involved no complex regulatory process but only an unclear issue of state law and a federal constitutional claim. The Court nonetheless reversed the district court and ordered abstention, stating: "Because the federal claim in this case is 'entangled in a skein of state law that must be untangled before the federal case can proceed' (citation omitted), we conclude that the District Court erred in not adopting appellants' suggestion to abstain." *Id.* at 88, 95 S.Ct. at 877.

■ It is apparent that this case involves difficult questions of North Carolina law relating to policy problems of substantial public import, and the defendant's constitutional challenge to this law may be mooted or presented in a different posture by state court determination of the underlying state law question. However, a dismissal of this action would not serve to avoid interference with a sophisticated state regulatory scheme and could serve to deprive the petitioner-defendant of an opportunity to liti-

gate its constitutional claims. *See Cox v. Planning District I Community Mental Health and Mental Retardation Services Board,* 669 F.2d 940 at 943 (4th Cir. 1982). Therefore, an order will issue wherein this court will stay this action pending disposition of the state court proceedings, after which, this court will make final disposition of the case.