UNITED STATES of America, Plaintiff,

v.

VILLAGE OF PALATINE, ILLINOIS; and, in their official capacities, Rita Mullins; Matthew Klein; Dick Kozdras; Scott Buening; and John E. Crowcroft, Defendants.

No. 93 C 2154.

United States District Court, N.D. Illinois, E.D.

May 13, 1993.

David G. Lubben, U.S. Atty's. Office, Chicago, IL, for U.S.

Matthew M. Klein, Jerome Wiener, Schain, Firsel & Burney, Ltd., Chicago, IL, for Village of Palatine, Ill., Rita Mullins, Matthew Klein, Dick Kozdras, Scott Buening, John E. Crowcroft.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The United States of America, pursuant to § 810(e) of the Fair Housing Act, as amended, 42 U.S.C. § 3610(e), brings this action against the Village of Palatine and, in their official capacities, Rita Mullins (mayor of Palatine), Matthew Klein (Village Attorney), Dick Kozdras (Director of Community Development), Scott Buening (Planning and Zoning Administrator) and John E. Crowcroft (Fire Prevention Officer), seeking injunctive relief to enable the Oxford House–Mallard to operate as it has since August 1, 1992, without regard to specific provisions of the Village of Palatine Code. Defendants now move to dismiss the action pursuant to the Anti–Injunction Act, 28 U.S.C. § 2283, and

the abstention doctrine enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. As explained below, the motion is denied.

## I. Motion to Dismiss Standard

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth* ).

## II. Background

Oxford Houses are intended to provide an environment conducive to the rehabilitative needs of persons recovering from drug and/or alcohol addiction. By congressional mandate and as required under charters issued by Oxford House, Inc. ("OHI"), a non-profit, tax-exempt Delaware Corporation, the houses are required to be democratically run and financially self-supporting. *See* 42 U.S.C. § 300x–4a. Additionally, any resident found to be using drugs or alcohol is to be expelled. *Id.* Exhibiting its commitment to combatting drug and alcohol abuse, and in order to meet its obligations in exchange for federal block grant funds, the State of Illinois has contracted with OHI to administer a revolving fund providing start-up loans for group homes to benefit recovering substance abusers. Oxford House–Mallard ("OH–M") is an unincorporated association operated under a charter issued by OHI. The six-bedroom house, located at 913 South Mallard Drive in Palatine, Illinois, has been in use as an Oxford House since August 1, 1992. Currently, OH–M houses eleven residents, one short of its capacity.

Palatine's zoning ordinance, while permitting any number of related persons to reside together in a dwelling in a single family zone, limits the number of unrelated persons allowed to reside in such a zone to three. The ordinance further provides that up to eight unrelated handicapped persons may live together in a single family residence if the group maintains around-the-clock professional staffing. OH–M is located within a single family residence, and its residents are handicapped within the meaning of 42 U.S.C. § 3602(h).

On March 22, 1993, OHI filed with the Department of Housing and Urban Development a timely complaint pursuant to § 810(e) of the Fair Housing Act, alleging that defendants discriminated against OHI on the basis of handicap by failing to make a reasonable accommodation in Palatine's zoning laws, such that OHI could lease and operate OH–M as a group home for up to twelve persons. Specifically, Palatine has demanded that OHI retain full-time professional staffing for OH–M, receive licensure or certification from the State of Illinois, and limit occupancy of the home to eight persons. OHI previously had requested that these requirements be waived, but Palatine refused.

On March 30, 1993, the Village of Palatine filed suit in the Circuit Court of Cook County against OHI, OH–M and William and Laura Grace, the owners of the residence located at 913 South Mallard Drive in Palatine. The state complaint seeks injunctive relief to reduce the number of occupants of OH–M on three grounds. First, Palatine claims that OHI and OH–M failed to obtain a rental dwelling inspection and license for operation of the property as a rental dwelling as required by local ordinance. Second, Palatine contends that the occupancy of the building by eleven unrelated persons violates the local zoning requirement that no more than three unrelated persons occupy a single family dwelling. Finally, Palatine maintains that the present occupancy coupled with the structure of OH–M, which does not comply with the standards set forth in the Palatine Building and Life Safety Codes for occupancy on a boarding or rooming home basis, present a severe safety hazard. At this time, pending in the Circuit Court is defendants' motion to dismiss based on the Village's failure to make reasonable accommodations as

required pursuant to the Federal Fair Housing Act.

Rather than allow the Circuit Court to address the federal issue as raised by the parties in the state proceeding, on April 9, 1993, the United States filed the instant action in this court, seeking injunctive relief to enable OH–M to operate as it has since August 1, 1992, without regard to the above described provisions of the Palatine Code.

## III.   Discussion

■ There is no dispute that both this court and the Circuit Court of Cook County possess jurisdiction to consider the respective complaints as presented.   Indeed, "federal courts and state courts often find themselves exercising concurrent jurisdiction over the same subject matter, and when that happens a federal court generally need neither abstain (*i.e.,* dismiss the case before it) nor defer to the state court proceedings (*i.e.,* withhold action until the state proceedings have concluded)." *Growe v. Emison,* —— U.S. ——, ——, 113 S.Ct. 1075, 1080, 122 L.Ed.2d 388 (1993) (citing *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)); *see also Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988); *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).   Nonetheless, both Congress and the United States Supreme Court have recognized that, in some rare classes of cases, "the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.'" *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989) (quoting *Younger,* 401 U.S. at 45, 91 S.Ct. at 751). From such recognition stems the Anti–Injunction Act (a congressional limitation on the power of the federal courts to grant injunctive relief), and the *Younger* abstention doctrine (a self-imposed limitation on the prerogative of the federal courts to grant injunctive relief), both of which are presently embraced by defendants.

■ The Anti–Injunction Act provides as follows:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.   It may be, as defendants argue, that no Act of Congress authorizes this court to enjoin state court proceedings to enforce local regulation.   Further, arguably such action is neither necessary in aid of our jurisdiction nor to protect or effectuate a federal judgment.   Nonetheless, it is well established that, despite its seemingly uncompromising language, the Anti–Injunction Act does not preclude a federal injunction of state court proceedings when the plaintiff in the federal court is the United States itself. *Leiter Minerals, Inc. v. United States,* 352 U.S. 220, 224–26, 77 S.Ct. 287, 290–91, 1 L.Ed.2d 267 (1957); *see also Mitchum v. Foster,* 407 U.S. 225, 235–36, 92 S.Ct. 2151, 2158–59, 32 L.Ed.2d 705 (1972); *United States v. Phillips,* 580 F.Supp. 517, 519 (N.D.Ill.1984).   As Justice Frankfurter explained in *Leiter:*

There is … a persuasive reason why the federal court's power to stay state court proceedings might have been restricted when a private party was seeking the stay but not when the United States was seeking similar relief.   The statute is designed to prevent conflict between federal and state courts.   This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest.   The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283, 28 U.S.C.A. § 2283, would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283, 28 U.S.C.A. § 2283, alone.   It is always difficult to feel confident about construing an ambiguous statute when aids to construction are so meager, but the interpretation excluding the

United States from the coverage of the statute seems to us preferable in the context of healthy federal-state relations. *Leiter,* 352 U.S. at 225–26, 77 S.Ct. at 290–91. Thus, this court possesses the power to grant the government's request for relief, even though such an order might interfere with the state court civil action.

■ The question remains, however, whether this court should exercise this power. In other words, is abstention required under *Younger* and its progeny? Whether abstention is appropriate where the federal government seeks to invoke jurisdiction under 28 U.S.C. § 1345 is an issue left unresolved by the United States Supreme Court, *see Colorado River,* 424 U.S. at 816 n. 23, 96 S.Ct. at 1246 n. 23, and a question receiving divergent treatment in the lower courts. *Compare United States v. Composite State Bd. of Medical Examiners,* 656 F.2d 131, 135 (5th Cir.1981) (*Younger* abstention inappropriate when the United States seeks to assert a federal interest against a state); *First Fed. Sav. and Loan Ass'n of Boston v. Greenwald,* 591 F.2d 417, 424 (1st Cir.1979) (policy underlying exception to Anti-Injunction Act when United States appears as plaintiff "applies as well, and indeed with greater force, to make abstention under general equitable principles inappropriate"); *Federal Home Loan Bank Bd. v. Empie,* 628 F.Supp. 223, 227–28 (W.D.Okla.1983) (*Younger* principles do not apply to an action that the federal government has initiated in federal court), *aff'd on other grounds,* 778 F.2d 1447 (10th Cir.1985); *E.E.O.C. v. Levi Strauss & Co.,* 515 F.Supp. 640, 643 (N.D.Ill. 1981) (*Younger* does not preclude United States from asserting federal interest in federal court) *with United States v. Ohio,* 614 F.2d 101, 104 (6th Cir.1979) (*Younger* principles applicable in suits brought by the United States); *United States v. California,* 639 F.Supp. 199, 206–07 (E.D.Cal.1986) (abstention appropriate despite United States' appearance as plaintiff); *United States v. Interlake, Inc.,* 429 F.Supp. 193, 199 (N.D.Ill.1977) (abstention not improper simply because

United States invokes jurisdiction under 28 U.S.C. § 1345), *motion for reconsideration denied,* 432 F.Supp. 985, 986 (N.D.Ill.1977). Neither our research nor that of the parties has revealed a case in which the Seventh Circuit has addressed the question of abstention where the United States seeks to invoke jurisdiction under § 1345.

■ In that both the Anti-Injunction Act and the *Younger* abstention doctrine are designed to minimize unnecessary friction between federal and state courts, we believe that the rationale driving the Court's decision in *Leiter* applies equally to make abstention inappropriate under *Younger* and other general equitable principles in cases where the United States seeks to invoke the jurisdiction of the federal courts. Whether we abstain, leaving the United States to request intervention in the state court action, or whether we entertain the government's complaint, friction between federal-state relations is inevitable. Of course, it would be preferable, in the abstract, to resolve this matter in a single proceeding. Nonetheless, as the Seventh Circuit recently recognized in a case in which it proceeded to consider the merits of the United States' motion for preliminary injunctive relief against a parallel state proceeding: "The law ... does not always provide for the most efficient result. Multiple judgment tangles are, to some extent, an unavoidable consequence of our system of dual judiciaries." *United States v. Rural Elec. Convenience Co-Op. Co.,* 922 F.2d 429, 440 (7th Cir.1991).[1]

In any event, to the extent that any circumstance might require a federal court to dismiss on the basis of *Younger* an action initiated by the United States, the instant case does not present such a circumstance. The United States is not a party to the ongoing proceeding in the Circuit Court of Cook County. Nor is its interest sufficiently allied with that of the private litigants in the tangentially related state proceeding. Unlike OHI, OH–M and the Graces, who seek to preserve the operation of OH–M, the United States seeks to vindicate the public interest

---

1. Of course, this extension of *Leiter* does not relieve the government from demonstrating that injunctive relief is warranted in substance.

of providing for fair housing throughout the United States. *See* 42 U.S.C. § 3601 ("It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."). This concern is much broader than those of the state court defendants, notwithstanding the content of the motion to dismiss recently filed in state court. The Fair Housing Act provides that, upon determining that

> any person or group of persons is engaged in a pattern or practice of resistance to the full rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, the Attorney General may commence a civil suit in any appropriate United States district court.

42 U.S.C. § 3614(a). In such an action, the federal district court, in addition to awarding preventative relief and damages, "may, to vindicate the public interest, assess a civil penalty against the respondent (i) in an amount not exceeding $50,000 for a first violations; and (ii) in an amount not exceeding $100,000, for any subsequent violation." 42 U.S.C. § 3614(d). These remedies are not available in the posture of the present state court proceeding. Accordingly, as abstention would leave the United States without an adequate remedy to vindicate the public interest, *Younger* abstention cannot apply. *See, e.g., Empie,* 778 F.2d at 1452 (abstention inappropriate where the United States' concerns transcend that of the private litigants in the state proceeding); *Levi Strauss & Co.,* 515 F.Supp. at 643 (same).

In sum, the principles of comity and federalism underlying both the Anti–Injunction Act and the *Younger* abstention doctrine are insufficient to defeat the United States' present assertion of public interest. Accordingly, defendants' motion to dismiss is denied.

### IV.  Conclusion

For the reasons set forth above, defendants' motion to dismiss is denied. It is so ordered.