# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 16, 2010

Lyle W. Cayce
Clerk

No. 09-40734

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

HENRY BILLINGSLEY, *et al.*,

Defendant-Appellant

Appeal from the United States District Court

for the Eastern District of Texas

Before SMITH, WIENER, and ELROD, Circuit Judges.

WIENER, Circuit Judge:

This case involves a dispute between, on the one hand, a married couple who own and occupy a home in Air Park subdivision ("the Picks") and, on the other hand, that subdivision's zoning and covenants compliance authority, *viz.*,

the Air Park – Dallas Zoning Committee, as well as its four members, Air Park GP, L.L.C., and Crow-Billingsley Air Park, Ltd. (collectively, "the Committee") over a footbridge that the Picks installed on their property in violation of restrictive covenants. The Committee sought to enforce the covenants in state court, and the Picks filed a Fair Housing Act ("FHA") counterclaim. The parties settled the lawsuit, but subsequently disagreed whether the settlement agreement required the Picks to remove the footbridge. The Committee sought to enforce the settlement agreement in the state court proceedings. After interpreting the settlement agreement in favor of the Committee, the state court mandated that the Picks remove the footbridge, which they have continually refused to do.

The Department of Justice ("the government") then brought an action in federal court on behalf of the Picks, and against the Committee, for violation of the FHA, and quickly moved for a preliminary injunction to restrain the Committee from removing the footbridge. The Committee raised two defenses: First, the Committee claimed that the allegedly offending conduct was protected by the First Amendment's guarantee of the right to "petition the Government for a redress of grievances,"[1] as defined by the Supreme Court through the *Noerr-Pennington* Doctrine.[2] Second, the Committee claimed that a federal court could not enjoin the Committee or the state court from litigation under the settlement agreement without violating the Anti-Injunction Act ("the Act").[3] The district court declined to rule that either of these defenses was applicable and granted the government's preliminary injunction. As we hold that the Anti-Injunction Act applies, we vacate the district court's grant of the preliminary injunction.

---

[1] U.S. Const. amend. I.

[2] *See generally E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

[3] 28 U.S.C. § 2283.

Consequently, we need not, and therefore do not, address the Committee's *Noerr-Pennington* argument.

## I. FACTS AND PROCEEDINGS

Alfred and Sheryl Pick reside in the Air Park Estates subdivision in Plano, Texas.    Mrs. Pick suffers from adrenomyeloneuropathy, a progressive neurological disorder that affects the spinal cord and causes difficulty in walking and balance.  In 2002, the Picks installed a two-foot wide, arched footbridge with handrails in front of their home, so that Mrs. Pick could safely cross the drainage ditch that lies between their home and the street.  The footbridge extended beyond the Picks' property line and into the right-of-way of the contiguous roadway, in technical violation of restrictive covenants that required the Committee's permission to make these types of installations.

In 2004, the Committee resolved to require the Picks to remove the footbridge because it extended into the right-of-way.  The Committee sent the Picks two letters instructing them either to remove the footbridge or face legal action.  The Picks responded, emphasizing that the footbridge was necessary for Mrs. Pick to reach the street safely.  The Committee continued its insistence that the Picks remove the footbridge, but they did not comply.

After the passage of close to a year, the Committee renewed its demands, but the Picks continued to refuse to remove the footbridge.  The Committee filed suit against Mr. Pick in Collin County, Texas state court.  In the state court suit, the Committee alleged that Mr. Pick had violated restrictive covenants to which he was bound by installing the footbridge without authorization and by refusing to remove it following receipt of the Committee's demands to do so.  One of the Committee's prayers for relief was for an injunction mandating that Mr. Pick remove the footbridge.  Mr. Pick filed a counterclaim in the state court, asserting that the Committee had discriminated against the Picks in violation of the FHA. The FHA requires the Committee to make reasonable accommodations and permit reasonable modifications for qualifying disabilities.

3

During the state court litigation, Mrs. Pick contacted the Committee and emphasized that she suffered from a disability that required her to retain the footbridge in its current form and location. The Committee refused Mrs. Pick's request, but suggested an alternative, *viz.*, an at-grade footbridge without handrails. Mrs. Pick wrote back to the Committee nearly a month later, indicating that she was willing to accept an alternative footbridge – so as to end the lawsuit – although she emphasized that the alternative would not be ideal. The Committee accepted Mrs. Pick's alternative design.

The lawsuit then went to mediation, and the parties reached a settlement. Following the settlement, the parties disagreed whether that agreement required the Picks to remove the footbridge. The Committee sought to enforce the settlement agreement in state court. After the Committee filed a motion for summary judgment, the state court ruled in its favor. The judgment of the state court dealt only with the meaning of the settlement agreement, which it interpreted to require that the Picks remove the footbridge after the Committee approved an alternative design. The Committee approved an alternative design, although there is some dispute as to whether the design it approved was the one proposed by Mrs. Pick. The Picks continued to refuse to remove the footbridge.

While the state court lawsuit was pending, the Picks filed a complaint with the Department of Housing and Urban Development ("HUD"), claiming that the Committee was violating the FHA by failing to accommodate their footbridge. After investigating the complaint, HUD issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A), asserting that the Committee was violating the FHA. The Committee chose to have the claims heard in federal court, as is permitted in 42 U.S.C. § 3612(a). HUD referred this case to the Department of Justice, which brought the claim by filing the instant action in district court pursuant to 42 U.S.C. § 3612(o). In its complaint, the government asserts that the Committee violated the FHA by failing to make reasonable

accommodations or modifications for Mrs. Pick's disability, and not treating her on equal terms.

The government quickly moved for a preliminary injunction to bar the Committee from removing the footbridge while the federal court action was pending. The Committee opposed the preliminary injunction on two theories. First, it claimed that all the actions at issue were protected by the *Noerr-Pennington* Doctrine. The Committee asserted that if the district court could not address these actions, there would be no likelihood of success on the merits at trial, and thus the preliminary injunction could not be issued. Second, the Committee claimed that the Anti-Injunction Act prohibited the district court from issuing an injunction that would conflict with the yet-to-be-enforced mandate of the state court, which requires the Picks to remove the footbridge. The district court rejected both contentions and granted the preliminary injunction after applying the well known four-factor test.[4] The Committee timely filed a notice of appeal.

## II. Analysis

### A. Standard of Review

We review a grant or denial of a preliminary injunction under an abuse-of-discretion standard.[5] We review *de novo* a district court's legal determination of the applicability of the Anti-Injunction Act.[6]

### B. The Anti-Injunction Act

---

[4] The test requires the court to determine whether there exist: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

[5] *See Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991).

[6] *See United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1994).

The Act states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[7]  The Act is "designed to prevent conflict between federal and state courts."[8]  The Act does not prohibit only injunctions directed at state courts themselves, but also injunctions directed at private parties when the injunction would prohibit using the results of a state court proceeding.[9]  As here the federal court is issuing an injunction that would invalidate the enforcement of a state court judgment, the only issue in this case is whether the government can avail itself of one of the limited exceptions to the Act.[10]  One of these exceptions – the one acutely at issue in this case[11] – allows for the United States to bypass the strictures of the Act when it seeks an injunction in a federal suit.[12]  We perceive that Congress intended to invalidate this exception in the

---

[7] 28 U.S.C. § 2283.

[8] *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 225 (1957).

[9] *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).

[10] The government argues that the Anti-Injunction Act does not apply because the state court trial has ended.  Because the judgment has yet to be enforced, however, the Act clearly applies.  Justice Brandeis noted that the "term ['proceedings'] is comprehensive.  It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process . . . . [It] applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective."  *Hill v. Martin*, 296 U.S. 393, 403 (1935) (footnotes omitted).

[11] The government has not briefed or raised the exception for a stranger to the state court proceeding, *see Chezem v. Beverly Enterprises-Texas, Inc.*, 66 F.3d 741, 742 (5th Cir. 1995) (noting that the Anti-Injunction Act does not apply to one who was neither a party nor a privity of a party in a state court action), so this argument is waived.  Even if it were not waived, however, the government could not prevail on this argument because it cannot show – as it must – that it was not in privity with the Picks.  *See Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 708 (5th Cir. 2005) (noting that the government was in privity with the private individuals because the EEOC sought "private benefits for individuals.").

[12] *See Leiter Minerals*, 352 U.S. at 225-26 (noting that the United States should not be barred by the Anti-Injunction Act when it seeks an injunction because "[t]he frustration of superior federal interests that would ensue from precluding the Federal government from

6

statutory provision at issue in this case, so we conclude that the United States cannot bypass the Act. Our conclusion is strengthened by the Supreme Court's advice regarding the Act: "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed . . . the fundamental principle of a dual system of courts leads inevitably to that conclusion."[13]

Here, the government sued the Defendants-Appellants under 42 U.S.C. § 3612, the statute that allows the Attorney General to commence "a civil action on behalf of the aggrieved person."[14]

> In a civil action under this subsection, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may grant as relief[15] any relief which a court could grant with respect to such discriminatory housing practice in a civil action under section 3613 of this title.[16]

Section 3613 of the relevant title is the one that allows private parties to enforce the FHA on their own behalf. An individual suing under § 3613 would not enjoy the exception to the Act that the United States claims here; he would thereby not be entitled to the relief sought in this case, i.e., a preliminary injunction to prevent the enforcement of the state court's ruling. A plain reading of § 3612 convinces us that the government cannot obtain a preliminary injunction in this case because a private plaintiff could not have done so under § 3613.

---

obtaining a stay of state court proceedings . . . would be so great that we cannot reasonably impute such a purpose to Congress from the general language of [the Act].").

[13] *Atl. Coast Line*, 398 U.S. at 297.

[14] 42 U.S.C. § 3612(o)(1).

[15] In the absence of any limiting phrases, we interpret "relief" to include any type of relief a district court could grant – such as the preliminary injunction here – not just final-judgment relief.

[16] 42 U.S.C. § 3612(o)(2).

After analyzing the rest of the FHA, we are satisfied that Congress firmly intended to limit the remedies available to the government when it sues on behalf of an individual under § 3612. In juxtaposition is § 3614, which allows the Attorney General to bring a case in federal court to remedy a "pattern or practice of resistance to the full enjoyment of any rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance."[17] Section 3614 itself does not limit the remedies available to the government; in fact, § 3614 lists the specific types of relief available to the government, "including a permanent or temporary injunction, restraining order, or other order against the person responsible for a violation of this subchapter as is necessary to assure the full enjoyment of the rights granted by this subchapter."[18] Congress could not have been unaware of this difference between §§ 3612 and 3614. We conclude that Congress intended only limited remedies under § 3612, *viz.*, those that a private plaintiff would receive under § 3613.

The government's counterarguments are unavailing. Even though the Uniformed Services Employment and Reemployment Rights Act of 1994 is similar to § 3612 in allowing the Attorney General to "appear on behalf of, and act as attorney for, the person on whose behalf the complaint is submitted,"[19] that statute does not limit its remedies. Rather, it specifically outlines a number of remedies that are available to the government, including both monetary damages and injunctions.[20] Further, this statute provides that these remedies are not to diminish the other rights and benefits provided under the chapter.[21]

---

[17]  42 U.S.C. § 3614(a).

[18] 42 U.S.C. § 3614(d)(1)(A).

[19] 38 U.S.C. § 4323(a)(1).

[20] 38 U.S.C. § 4323(d)(1), (e).

[21] 38 U.S.C. § 4323(d)(2)(A).

This statute strengthens our interpretation of § 3612 by showing that Congress affirmatively granted remedial powers in 38 U.S.C. § 4323, but expressly limited the remedial powers available under § 3612. The government also cites to Title VII,[22] but its argument thereunder fails for the same reasons.

Neither does the government persuade us of the correctness of its interpretation of § 3612 when it points to § 3612's statement that "[a]ny relief so granted that would accrue to an aggrieved person in a civil action commenced by that aggrieved person under section 3613 of this title shall also accrue to that aggrieved person in a civil action under this subsection."[23] The government contends that this language would be meaningless unless the United States could secure relief that is not available to the private party. We disagree. A more reasonable interpretation of this language is the one which accepts that whatever relief the United States receives – which would be limited to the relief that a private plaintiff could receive if he sued successfully under § 3613 – would accrue to the private party.

The government also asserts that it would be illogical for § 3612 to allow for the issuance of injunctions when an administrative law judge finds there is imminent discriminatory housing practice – as the statute allows in § 3612(g)(3) – but to disallow injunctive relief when the government brings the action in federal court. This argument only bolsters our holding: Congress explicitly granted remedial powers to the administrative law judge, demonstrating that it knows how to do so, but did not grant such powers to the federal courts. This may appear to be anomalous on the part of Congress, but we do not inquire into the reasons for its decisions.

Lastly, the government insists that the exception should apply here because there is a superior federal interest in the enforcement of the FHA.

---

[22] 42 U.S.C. § 2000e-5(f).

[23] 42 U.S.C. § 3612(o)(3).

Although we agree with the government that there is a superior federal interest at play in this case,[24] we disagree with the government's argument that this interest should overcome the limitations in § 3612. Perhaps the absence of a superior federal interest may preclude the application of the exception, but the presence of such an interest is not enough to overcome the specific limitations in § 3612.

## III. CONCLUSION

We hold that the Anti-Injunction Act is applicable in this case and that the government cannot avail itself of the exception for the United States when it seeks an injunction because of § 3612's explicit limitations on the remedial powers of the federal courts. As we decide this appeal under the Anti-Injunction Act, we need not, and therefore do not, address the Committee's alternative contention that the ever-expanding *Noerr-Pennington* Doctrine protects their behavior. Accordingly, we VACATE the district court's grant of a preliminary injunction and REMAND this case to that court for further proceedings consistent with this opinion.

---

[24] While the government has not identified a pattern or practice, the government is acting in the public interest when it directly enforces the FHA. The Supreme Court has said as much in the Title VII context, *see General Tel. Co. of the Northwest v. E.E.O.C.*, 446 U.S. 318, 326 (1980), and we conclude that this rationale applies equally here.

10