FEDERAL HOME LOAN BANK
BOARD, Washington,
D.C., Plaintiff,

v.

R.Y. EMPIE, in his official capacity as Oklahoma State Banking Commissioner; and Michael C. Turpen in his official capacity as Attorney General of the State of Oklahoma, Defendants.

No. Civ–83–500–W.

United States District Court,
W.D. Oklahoma.

July 25, 1983.

**224**

William S. Price, U.S. Atty., Richard Freeman, Asst. U.S. Atty., Oklahoma City, Okl., Harvey Simon, Associate Gen. Counsel, John E. Gunther, Deputy Director, Litigation Div., Denise Z. Field, Trial Atty., Office of Gen. Counsel, Federal Home Loan Bank Bd., Washington, D.C., for Federal Home Loan Bank Bd.

Michael C. Turpen, Atty. Gen., George R. Barr, Jr., Asst. Atty. Gen., Oklahoma City, Okl., for Michael C. Turpen.

Sandi Cone Silkey, Oklahoma City, Okl., for R.Y. Empie.

Laura Nan Pringle, Vice President and Gen. Counsel, Oklahoma Bankers Ass'n, Ann Threlkeld, Don G. Holladay, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., for amicus curiae Oklahoma Bankers Assn.

### ORDER

LEE R. WEST, District Judge.

This matter comes before the Court upon the defendants' Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Plaintiff responded in opposition to the motion. The Oklahoma Bankers Association filed an Amicus Curiae Brief in support of defendants' Motion to Dismiss. Plaintiff responded in opposition to the Oklahoma Bankers Association's Amicus Curiae Brief and defendants replied to plaintiff's response.

The Federal Home Loan Bank Board (FHLBB) filed this action pursuant to the Home Owner's Loan Act of 1933 (HOLA), 12 U.S.C. § 1461 *et seq.* (1980), and 28 U.S.C. §§ 1331, 1337 and 1345 (1980), to obtain a declaration that the defendants lack the authority to interfere with, or to impede, the exclusive right under controlling federal law of the FHLBB to regulate all aspects of the operations of federally-chartered savings institutions, particularly in the area of advertising practices. The FHLBB also seeks an injunction to prevent the defendants from taking any action to compel compliance by any federally-chartered savings institution with any Oklahoma laws or regulations relating to advertising practices, specifically the use of the terms "bank", "banks", or "banking" in the advertising by such institutions.

The FHLBB initiated this action in response to a suit filed by the defendant, R.Y. Empie, Oklahoma State Banking Commissioner, and the Oklahoma Bankers Association in the District Court of Muskogee County, Oklahoma, against Victor Federal Savings and Loan Association of Muskogee, Oklahoma, seeking to enjoin the use of the term "banking" by Victor Federal's advertisements as violative of Okla.Stat. Ann. tit. 6, § 1401 (West 1982).

### Proposition I

In Proposition I, defendants contend that neither the HOLA nor any rules or regulations promulgated by the plaintiff has preempted 6 Okla.Stat.1981, § 1401. Defendants contend that the HOLA does not expressly provide for preemption nor is its regulatory scheme so pervasive as to imply an intent by Congress for the HOLA to "occupy the field."

Plaintiff contends that federal law has preempted the application of Oklahoma law to the advertising practices of federally-chartered savings institutions. Plaintiff contends that Congress intended the HOLA to occupy the field of regulation of federally-chartered savings institutions. Plaintiff also contends that Okla.Stat.Ann., tit. 6, § 1401 directly conflicts with 12 C.F.R. § 563.27 and is therefore preempted.

In *Fidelity Federal Savings and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664, the United States Supreme Court discussed Congress' broad delegation of authority to the

FHLBB in the HOLA. With reference to the HOLA, the Court stated at page 4921 that

in § 5(a) of the Act, Congress gave the Board plenary authority to issue regulations governing federal savings and loans:

"In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, *operation*, and *regulation* of associations to be known as 'Federal Savings and Loan Associations', or 'Federal mutual savings banks' ..., and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States." 12 U.S.C. § 1464(a) (1976 ed., Supp. IV) (emphasis added).

The broad language of § 5(a) expresses no limits on the Board's authority to regulate the lending practices of federal savings and loans. As one court put it, "[i]t would have been difficult for Congress to give the Bank Board a broader mandate." *Glendale Federal Sav. & Loan Assn. v. Fox*, 459 F.Supp. 903, 910 (CD Cal.1978), final summary judgment granted, 481 F.Supp. 616 (1979), order reversing and remanding on other grounds reported at 636 F.2d 1078 (CA9 1981), cert. pending, No. 81–1192.

. . . .

Congress invested the Board with broad authority to regulate federal savings and loans so as to effect the statute's purposes, and plainly indicated that the Board need not feel bound by existing state law.

This discussion supports a finding that Congress intended the HOLA to preempt all state regulation over federally-chartered savings and loan institutions. Decided before *de la Cuesta, supra,* the Court in *People, Etc. v. Coast Federal Sav. & Loan*

*Ass'n,* 98 F.Supp. 311, 317 (S.D.Cal.1951), stated that the FHLBB, which determines that advertising methods of savings and loan associations violate its rules, has plenary power to correct any improper or unlawful practices. The Court went on to state at page 319 that "as to federal savings and loan associations, Congress made plenary, preemptive delegation to the Board to organize, incorporate, supervise, and regulate, leaving no field for state supervision." Likewise, the United States Court of Appeals, Ninth Circuit, held that "[t]he broad regulatory authority over the federal associations conferred upon the Bank Board by HOLA does wholly preempt the field of regulatory control over these associations." *Conference of Federal Sav. & Loan Ass'ns v. Stein,* 604 F.2d 1256, 1260 (9th Cir.1979), *aff'd* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754. This Court finds that Congress intended the HOLA to preempt all state regulation over federally-chartered savings and loan institutions and, therefore, any state law which falls within this area exclusively occupied by the HOLA must give way by virtue of the supremacy clause of the United States Constitution. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 236, 67 S.Ct. 1146, 1155, 91 L.Ed. 1447 (1947). Because advertising by federal savings and loan associations is regulated by 12 C.F.R. § 563.27, pursuant to the HOLA, 6 O.S. § 1401 (1981) is preempted.

Proposition II

In Proposition II, defendants contend that plaintiff's preemption argument is actually a defense that should be raised in the pending state action and that, therefore, this Court lacks jurisdiction in this case. Defendants also contend that this Court should abstain from this case under both the *Pullman* and *Younger* doctrines of abstention. The Oklahoma Bankers Association in its Amicus Curiae Brief also raises this contention. Defendants further contend that an injunction in this case is inappropriate because the plaintiff has an adequate remedy at law and is not going to suffer irreparable harm. The Oklahoma

Bankers Association also contends that no case or controversy exists and therefore this action should be dismissed under the Ripeness Doctrine.

Plaintiff contends that this Court has jurisdiction over this action; that this Court has subject matter jurisdiction over the Bank Board's Complaint under 28 U.S.C. §§ 1331, 1337, and 1345; that the *Wycoff* case and its progeny are totally inapplicable to the Bank Board's Complaint; and that the Bank Board has clear authority to seek relief against state interference with its exclusive federal regulatory scheme. Plaintiff also contends that this case is not appropriate for the exercise of abstention and that *Younger* and *Pullman* are not applicable here. Plaintiff further contends that the Bank Board's Complaint states a case or controversy that is ripe for adjudication.

■ This Court finds that it has original jurisdiction of this action under 28 U.S.C. § 1331 in that the matter in controversy arises under the Constitution of the United States, article VI, cl. 2, and the laws of the United States, the HOLA, as amended, 12 U.S.C. § 1461 *et seq.* Because the HOLA is an "Act of Congress" regulating commerce within the meaning of 28 U.S.C. § 1337, *People of St. of Ill. ex rel. Bowman v. Home Fed. S. & L.A.*, 521 F.2d 704, 706 (7th Cir.1975), this Court has original jurisdiction under 28 U.S.C. § 1337. Because this action was brought by an agency of the United States, the FHLBB, this Court also has original jurisdiction of this action under 28 U.S.C. § 1345. Furthermore, this Court finds that the FHLBB has authority to bring this action under 12 U.S.C. § 1464(d)(1) which provides that

> [t]he Board shall have power to enforce this section and rules and regulations made hereunder. In the enforcement of any provision of this section or rules and regulations made hereunder, or any other law or regulation, or in any other action, suit, or proceeding to which it is a party or in which it is interested, ..., the Board is authorized to act in its own name and through it own attorneys.

The United States Supreme Court stated in *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952) that

> [w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law. *Tennessee v. Union & Planters' Bank*, 152 U.S. 454 [14 S.Ct. 654, 38 L.Ed. 511]; *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22 [33 S.Ct. 410, 57 L.Ed. 716]; *Taylor v. Anderson*, 234 U.S. 74 [34 S.Ct. 724, 58 L.Ed. 1218].

Because the FHLBB is not a defendant in the state court action, this Court finds that *Wycoff, supra,* is not applicable and defendants' contention that plaintiff's preemption argument is actually a defense that should be raised in the pending state action is groundless.

■ The United States Supreme Court discussed the doctrine of abstention in *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483. At page 813, 96 S.Ct. at page 1244 the Court stated that

> [a]bstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to

exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 [79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163] (1959). [I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Alabama Pub. Serv. Comm'n v. Southern R. Co.*, 341 U.S. 341, 361 [71 S.Ct. 762, 774, 95 L.Ed. 1002 (1951) (Frankfurter, J., concurring in result).

In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 23–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 the United States Supreme Court stated:

... we emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction. Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender, see n. 29, *supra*, the presence of federal-law issues must always be a major consideration weighing against surrender.

Defendants rely on *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 431–34, 102 S.Ct. 2515, 2521–22, 73 L.Ed.2d 116 in which the United States Supreme Court stated that

*Younger v. Harris*, 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971), and its progeny espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances.

. . . .

Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights.

The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. *Moore v. Sims*, 442 U.S. 415, 423 [99 S.Ct. 2371, 2377, 60 L.Ed.2d 994] (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–05 [95 S.Ct. 1200, 1208–09, 43 L.Ed.2d 482] (1975). The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as in *Huffman supra.* Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. *Trainor v. Hernandez*, 431 U.S. 434 [97 S.Ct. 1911, 52 L.Ed.2d 486] (1977); *Juidice v. Vail*, 430 U.S. 327 [97 S.Ct. 1211, 51 L.Ed.2d 376] (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore, supra*, [442 U.S.] at 426 [99 S.Ct. at 2379]. "[T]he ... pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims ..." *Id.*, at 430 [99 S.Ct. at 2381]. See also *Gibson v. Berryhill*, 411 U.S. 564 [93 S.Ct. 1689, 36 L.Ed.2d 488].

This Court, however, will follow the reasoning and holding of the United States Court of Appeals, Fifth Circuit, in *U.S. v. Composite State Bd. of Med. Examiners*, 656 F.2d 131 (5th Cir.1981). That court held that "abstention is inappropriate where the United States is seeking to assert a federal interest against a state interest." The Court stated at page 136 that

[f]or the Federal Government and its agencies, the federal courts are the forum of choice. For them, ... access to

the federal courts is 'preferable in the context of healthy federal-state relations.'" *NLRB v. Nash-Finch Co., supra,* 404 U.S. [138] at 147, 92 S.Ct. [373] at 379 [30 L.Ed.2d 328 (1971)] (*quoting Leiter Minerals, Inc. v. United States, supra,* 352 U.S. [220] at 226, 77 S.Ct. [287] at 291 [1 L.Ed.2d 267 (1957)]). . . . This Court does not find that "*compelling* circumstances" exist "indicating that the state court is much more qualified to hear the case." *Composite State Bd. of Med. Examiners, supra,* at page 136. Neither does it find that "the interests of the state defendant and the federal plaintiff are so 'intertwined' as to be considered identical." *Composite State Bd. of Med. Examiners, supra,* at page 137. This Court does find, however, that it has jurisdiction of this action, that FHLBB has authority to bring this action, that constitutional and federal-law issues are present, and that the FHLBB must have access to a federal court to seek relief against state interference with its exclusive federal regulatory scheme. Therefore, abstention by this Court is inappropriate.

■ This Court also finds that abstention is inappropriate under *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Where, as in this case, "a state ruling on local law cannot settle the federal constitutional questions involved in the case," this doctrine is "inapplicable". *Federal Pr. Com'n v. Corporation Com'n of State of Okla.,* 362 F.Supp. 522, 546 (W.D.Okla.1973), *aff'd,* 415 U.S. 961, 94 S.Ct. 1548, 39 L.Ed.2d 863.

■ This Court finds that defendants' contention that an injunction in this case is inappropriate is incorrect. Defendants contend that plaintiff has an adequate remedy at law in that it may intervene in the pending state court action and then raise the defense of preemption. They also contend that plaintiff will not suffer irreparable harm if defendants are not enjoined. This Court finds that the plaintiff must have access to this Court to seek relief against state interference with its exclusive federal regulatory scheme; otherwise, plaintiff does not have an adequate remedy at law and will suffer irreparable harm.

In *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937) the United States Supreme Court stated that

[a] "controversy" . . . [is] one that is appropriate for judicial determination. *Osborn v. United States Bank,* 9 Wheat. 738, 819 [22 U.S. 738, 819, 6 L.Ed. 204]. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. *United States v. Alaska S.S. Co.,* 253 U.S. 113, 116 [40 S.Ct. 448, 449, 64 L.Ed. 808]. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *South Spring Gold Co. v. Amador Gold Co.,* 145 U.S. 300, 301 [12 S.Ct. 921, 36 L.Ed. 712]; *Fairchild v. Hughes,* 258 U.S. 126, 129 [42 S.Ct. 274, 275, 66 L.Ed. 499]; *Massachusetts v. Mellon,* 262 U.S. 447, 487, 488 [43 S.Ct. 597, 601, 67 L.Ed. 1078]. It must be a real substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. See *Muskrat v. United States, supra.*

The defendant, R.Y. Empie, Oklahoma State Banking Commissioner, in this action, has, by filing suit in state court, taken concrete action to compel a federally-chartered savings and loan association to comply with state law. Because the FHLBB believes that no state agency has the power to assert regulatory authority over a federally-chartered savings and loan association and that the FHLBB's regulations preempt the specific state law that defendant R.Y. Empie seeks to enforce, this Court finds that a case or controversy exists.

Within the context of a motion to dismiss under Rule 12(b), F.R.Civ.P., all well-pleaded factual allegations are taken as true and all reasonable inferences from them are indulged in favor of the pleader. *Olpin v.*

*Ideal National Insurance Co.*, 419 F.2d 1250 (10th Cir.1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809 (1970).

Accordingly, this Court finds that defendants' Motion to Dismiss should be and is hereby DENIED.

## ON MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court upon the plaintiff's Motion for Summary Judgment. Defendants responded in opposition to the motion. The Oklahoma Bankers Association filed an Amicus Curiae Brief in support of defendants' response to plaintiff's motion, and Plaintiff responded in opposition to the Amicus Curiae Brief.

Plaintiff contends that there exists no genuine issue of material fact. Plaintiff also contends that federal law exclusively governs the policies and practices of federally-chartered savings institutions, including the validity of their advertising practices, to the exclusion of state law; that Oklahoma law concerning the use of the terms "bank" and "banking" in advertisements of federally-chartered savings institutions directly conflicts with controlling federal law and cannot be given effect; and that the ability of a federally-chartered savings bank to use the name "bank" is expressly granted by federal law and cannot be challenged under state law. Plaintiff requests this Court to rule that federal law exclusively governs the advertising practices of federally-chartered savings institutions and that defendants have no authority to interfere with the exclusive regulation and supervision of the Board over the operations of federally-chartered savings institutions in Oklahoma. Plaintiff also requests this Court to restrain the defendants and all persons acting in concert with them from seeking to compel compliance by the federally-chartered savings associations or savings banks with any Oklahoma laws relating to their advertising practices.

Defendants contend that the following genuine issues of material fact exist: that the Federal Home Loan Bank Board (FHLBB) is not "exclusively" responsible for the organization, examination, supervision, and regulation of federal savings and loan associations as plaintiff contends but that state law is applicable in areas such as real property and mortgage statutes, zoning, criminal statutes, etc.; that an advisory opinion issued by the FHLBB's Office of the General Counsel on February 12, 1980, concerning use of the terms "bank" and "banking" in advertisements by a Missouri federal savings and loan association does not constitute a rule or regulation of the FHLBB and has no binding legal effect; that an action referred to by plaintiff initiated by the Oklahoma Bankers Association against Family Federal Savings Bank in the District Court of Creek County, Oklahoma, does not have as an issue use of banking terminology by savings banks; thus, all discussion of and argument concerning use of the words "bank" or "banking" by federal savings banks is inappropriate in the present action and should be disregarded.

Defendants also contend that federal preemption of state law should not be found to exist in the absence of persuasive reasons; that neither Congress nor the FHLBB has preempted all state law which may apply to federal savings and loan associations; and that the FHLBB has not preempted state advertising statutes. The Oklahoma Bankers Association in its Amicus Curiae Brief makes similar arguments.

On a motion for summary judgment, this Court must construe the facts in a way most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Upon consideration of the Motion for Summary Judgment filed herein, this Court finds that no genuine issues of material fact are present in this case. Summary judgment is, therefore, appropriate.

The specific laws at issue dealing with advertising are 12 C.F.R. § 563.27, promulgated by the FHLBB, and 6 O.S. § 1401. Title 12, Code of Federal Regulations, section 563.27 states:

No insured institution shall use advertising (whether printed, radio, display, or

of any other nature) or make any representation which is inaccurate in any particular or which in any way misrepresents its services, contracts, investments, or financial condition.

Title 6, Oklahoma Statutes, section 1401 states in part:

It shall be unlawful for any individual, firm, association or corporation to receive money upon deposit or transact a banking business except as authorized by the laws of this state or of the United States, or to use or advertise, in connection with any business other than the banking business, conducted under the banking laws of this state, the words: Banker, Bankers, Investment Banker, or any other word or term calculated to deceive the public into belief that such person, firm, association or corporation is engaged in the banking business....

In *Fidelity Federal Savings and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664, the United States Supreme Court discussed Congress' broad delegation of authority to the FHLBB in the Home Owners' Loan Act (HOLA). With reference to the HOLA, the Court stated at page 4921 that

in § 5(a) of the Act, Congress gave the Board plenary authority to issue regulations governing federal savings and loans:

"In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, *operation*, and *regulation* of associations to be known as 'Federal Savings and Loan Associations', or 'Federal mutual savings banks' ..., and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States." 12 U.S.C. § 1464(a) (1976 ed., Supp. IV) (emphasis added).

The broad language of § 5(a) expresses no limits on the Board's authority to regulate the lending practices of federal savings and loans. As one court put it, "[i]t would have been difficult for Congress to give the Bank Board a broader mandate." *Glendale Federal Sav. & Loan Assn. v. Fox*, 459 F.Supp. 903, 910 (CD Cal.1978), final summary judgment granted, 481 F.Supp. 616 (1979), order reversing and remanding on other grounds reported at 636 F.2d 1078 (CA9 1981), cert. pending, No. 81–1192.

. . . .

Congress invested the Board with broad authority to regulate federal savings and loans so as to effect the statute's purposes, and plainly indicated that the Board need not feel bound by existing state law.

This discussion supports a finding that Congress intended the HOLA to preempt all state regulation over federally-chartered savings and loan institutions. Decided before *de la Cuesta, supra,* the Court in *People, Etc. v. Coast Federal Sav. & Loan Ass'n,* 98 F.Supp. 311, 317 (S.D.Cal.1951), stated that the FHLBB, which determines that advertising methods of savings and loan associations violate its rules, has plenary power to correct any improper or unlawful practices. The Court went on to state at page 319 that "as to federal savings and loan associations, Congress made plenary, preemptive delegation to the Board to organize, incorporate, supervise, and regulate, leaving no field for state supervision." Likewise, the United States Court of Appeals, Ninth Circuit, held that "[t]he broad regulatory authority over the federal associations conferred upon the Bank Board by HOLA does wholly preempt the field of regulatory control over these associations." *Conference of Federal Sav. & Loan Ass'ns v. Stein,* 604 F.2d 1256, 1260 (9th Cir.1979), *aff'd* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754.

In *Joseph E. Seagram & Sons, Inc. and Jes Holdings, Inc. v. Frank E. Marley, Jr. and Conoco, Inc.,* No. CIV–81–869–W

(W.D.Okla. July 17, 1981), this Court found that "the Oklahoma Multinational Corporation Take-Over Bid Act is inconsistent with the Williams Act and 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the Williams Act and is therefore invalid under the Supremacy Clause of the United States Constitution." So also does this Court find that Congress intended the HOLA to preempt all state regulation over federally-chartered savings and loan institutions and, therefore, any state law which falls within this area exclusively occupied by the HOLA must give way by virtue of the supremacy clause of the United States Constitution. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 236, 67 S.Ct. 1146, 1155, 91 L.Ed. 1447 (1947). Because advertising by federal savings and loan associations is regulated by 12 C.F.R. § 563.27, pursuant to the HOLA, 6 O.S. § 1401 (1981) is preempted.

Title 12, United States Code, section 1464(i)(2) states:

> Subject to the rules and regulations of the Board, any Federal association may convert itself from the mutual form to the stock form of organization, or from the stock form to the mutual form, and any Federal association may change its designation from a Federal savings and loan association to a Federal savings bank, or the reverse.

Use of the term "Federal savings bank", therefore, is expressly permitted by federal law, and any state law which purports to prohibit this designation is preempted.

Accordingly, this Court finds that plaintiff's Motion for Summary Judgment should be and is hereby GRANTED.